## PETERS v. UNITED STATES.

### No. 8608.

Circuit Court of Appeals, Ninth Circuit.

June 16, 1938.

Harry G. McCain, of Ketchikan, Alaska, and George Grigsby, of Juneau, Alaska, and Joseph O. Stearns, Jr., of Ketchikan, Alaska, for appellant.

---

[1] 5 Cir., 87 F.2d 677.

William A. Holzheimer, U. S. Atty., and George W. Folta, Asst. U. S. Atty., both of Juneau, Alaska, for the United States.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

HANEY, Circuit Judge.

Appellant was indicted for fraudulently burning a dwelling house with intent to defraud the insurer, a felony under Compiled Laws of Alaska, 1933, § 4794, was convicted, was sentenced to imprisonment in a federal penitentiary for three years, and appealed.

Appellant, on September 10, 1935, obtained a fire insurance policy covering her house in the sum of $2,500, and covering her household furniture and personal effects in the sum of $1,000. The property was located in or near Ketchikan, Alaska. On October 2, 1936, she borrowed $400 from a local bank, mortgaged her property as security, and deposited the insurance policy with the bank. Her house was located on the beach, and set on piles above tide-lands.

Appellant was the owner of a half-interest in a mink farm, located about a half mile from her home. She testified that on November 27, 1936, she went from the mink farm to her home, arriving at the latter place about 9 a. m.; that she stayed there until about 4 p. m.; that she then returned to the mink farm and while feeding the mink, one of them bit her finger; that she then returned to her house about 7:30 p. m., stayed there until about 10:30 p. m., when she again returned to the mink farm.

About 2:45 a. m. on November 28, 1936, two patrolmen for the City of Ketchikan, went past appellant's house, while on duty, in an automobile. About two miles from the house they turned around and returned, and noticed smoke "coming out from underneath the eaves and rafters". The doors were locked, and the blinds were down. A fire alarm was made. While the fire was being extinguished, a neighbor went after appellant. After the fire was extinguished, it appeared that there was a hole burned through the floor in a closet, and another hole burned through the floor in or near a corner of the bedroom.

There were several investigations to determine the cause of the fire prior to 1:30 p. m. on November 28, 1936. Appellant left the house, according to her testimony after about a half hour, and returned about 8:30 a. m. at which time she saw two strangers coming out of the back door. She left about 8:40 a. m., she said, and returned about 11:10 a. m., at which time the house was full of people. She said that she left the house about 12:15 p. m. and did not return that day.

Some officers investigated to attempt to find the cause of the fire, again, about 1:30 p. m. In the closet the walls were boards. A few inches from the floor, the ends of the boards had been sawed off. Between that wall and the outer wall, the officers found some paper, partially charred, and some kindling, partially charred. It was near the hole in the floor, and was wet when found. In the bedroom, the walls were similar, and in addition, there was a baseboard at the floor. A piece of the baseboard fell to the floor, and the officers found more paper and kindling between the walls, where the inner wall had been sawed similarly to the wall in the closet, near the hole in the floor in the bedroom. Photographs were taken, and the paper and kindling then removed. The investigation and the pictures were made, and the evidence removed, without appellant's knowledge or consent, and without a search warrant.

Appellant was arrested at 4 p. m. on November 28, 1936. She testified that at the time of her arrest, the arresting officer had told her about finding the kindling, and that thereafter she heard about the kindling and photographs "from everybody in town". A day or so afterward, appellant was released on bail. Sometime thereafter, her attorney was shown the photographs taken and the kindling.

There was testimony that the stoves and chimney in the house were not defective; that there were no electric wires near either of the holes in the floor; that there was no reason for the fire unless it had been set; that the fire had evidently started four or five hours previous to discovery, but that on account of lack of oxygen in the house, it being tightly closed, it could not burn rapidly; and that most of the damage, other than in the immediate vicinity of the holes was caused by heat rather than flame.

For appellant there was testimony that her house had been remodeled shortly before she obtained the insurance; that she had $45 in a slipper in the closet; that when she was told that her house was on fire she said "Oh, my God" and "got all excited"; that the recess in the closet was made a long time prior to the fire for the purpose of

502

thawing frozen water pipes without burning the wall; that although practically everything near the holes was burned, yet the paper and kindling were not totally burned; that she had the opportunity to destroy the kindling and paper, after the fire but before the discovery of such evidence by the officers.

At the trial, witness Johnson, the insurer's agent, testified as to the finding of the paper and kindling and identified some of the photographs without objection by appellant. Witness McGilvary, a carpenter, then testified to the same effect, and identified certain photographs without objection. Appellee then offered one box of kindling in evidence, to which appellant objected, because there was "a complete failure of identification". The objection was overruled. Thereafter, several boards were identified by the witness and introduced in evidence without objection. After some cross-examination by appellant's attorney, he moved to strike the exhibits on the ground that it had not been shown that the premises were in "approximately the same condition as at the time of the fire", evidently meaning the time when they were obtained. There was further cross examination, then redirect examination, and at the conclusion of recross examination, appellant for the first time raised the point that the evidence was obtained in violation of her rights under the Fourth Amendment of the Constitution, U.S.C.A.Const.Amend. 4. Thereafter that objection was repeated during the trial, in the motion for a directed verdict and in the motion for new trial.

Only two questions are raised: (1) The validity of the search, and (2) the sufficiency of the evidence.

▆ Nearly five months elapsed after the fire before trial of appellant. Notwithstanding knowledge of the seizure of the evidence and the taking of the photographs no motion was made to suppress the evidence. Oral evidence obtained from what we assume was an unreasonable search was first admitted without objection. Under such circumstances, the objection taken at the trial came too late. Segurola v. United States, 275 U.S. 106, 111, 48 S.Ct. 77, 79, 72 L.Ed. 186, and cases cited; Cogen v. United States, 278 U.S. 221, 223, 49 S.Ct. 118, 119, 73 L.Ed. 275; Rocchia v. United States, 9 Cir., 78 F.2d 966, 970. By failing to present the matter in advance of the trial, appellant waived her constitutional rights. Cogen v. United States, supra, page 223, 49 S.Ct. page 119.

Appellant relies on Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647, but in that case defendant had moved to suppress the evidence in advance of the trial, which motion was denied. At the trial, the same objection was again raised, and although it was apparent that defendant's constitutional rights had been violated, the trial court deemed itself bound by the former ruling. Here, the evidence indicates that appellant actually waived the point, by not moving to suppress the evidence in advance of the trial, and by failing to urge it when evidence was first submitted at the trial. To the same effect as Gouled v. United States, supra, is Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654. The other case relied on by appellant, Agnello v. United States, 269 U.S. 20, 34, 46 S.Ct. 4, 7, 70 L.Ed. 145, 51 A.L.R. 409, is readily distinguishable, because there the defendant had no knowledge of the unreasonable seizure until he made his objection. Such is not the case here.

▆ With respect to the contention that the evidence is insufficient, the only contention is that the circumstantial evidence is not inconsistent with innocence. The motive could be readily inferred. The possibility mentioned by appellant that the evidence shows that someone else "planted" the paper and kindling and set the fire, is not consistent with the testimony that the doors were locked. The possibility that someone might have "planted" the paper and kindling after the fire, is inconsistent with the origin of the fire, the two holes, widely separated, and the lack of reason for the fire other than that it was started by paper and kindling. The argument that since appellant had the opportunity to dispose of the evidence after the fire, and did not do so, thus justifying an inference that she did not know it was there is explained by the inference that she might have thought it to have been consumed, and that it was dark when she had the opportunity. The darkness is likewise an explanation as to why the officers on their first investigations did not find the evidence. We think the verdict was sustained by the evidence.

Affirmed.