## PIERCE v. UNITED STATES.
### No. 11155.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 10, 1952.

Decided May 15, 1952.

---

Edward A. McCabe, Washington, D. C., with whom Donald O. Montgomery, Washington, D. C., was on the brief, for appellant.

Joseph F. Goetten, Asst. U. S. Atty., Washington, D. C., with whom Charles M. Irelan, U. S. Atty., Frank H. Strickler and Joseph M. Howard, Asst. U. S. Attys., all of Washington, D. C., were on the brief, for appellee. George Morris Fay, U. S. Atty. when the record was filed, Washington, D. C., also entered an appearance for appellee.

Before WILBUR K. MILLER, PROCTOR and BAZELON, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

The question here is whether the McNabb ruling[1] requires us to set aside appellant's conviction of robbery because his confession, made while he was in custody and before he was presented to a committing magistrate, was admitted in evidence against him.

The facts are these: About 2:00 a. m. on February 1, 1951, William F. Jordan was the sole attendant on duty at a gasoline filling station. The appellant and one Francis Taylor walked in and asked him to change a dime so they could buy peanuts and coca-cola. Having obtained the change and made the purchases, they started away and Jordan went in the rest room to wash his hands. When he emerged a few minutes later he was attacked by the two men, who had meanwhile returned to the scene. Pierce, whom he did not know but later identified as one of his assailants, held him while Taylor, whom he had known before, beat him into insensibility. They then took from his pocket $92.65 belonging to his employer. When Jordan regained consciousness he managed to telephone the police, who removed him to a hospital. He told them Taylor was one of the robbers.

Two police officers who had been assigned to the case were at Taylor's house awaiting his return when Pierce appeared there at 11:30 p. m., February 1, the day of the robbery. They took him into custody, as they had learned he was a friend and associate of Taylor and suspected he had been his companion in the robbery. He was wearing a black overcoat from which a button was missing. After lodging Pierce in a cell at a precinct police station, the officers returned to Taylor's home and maintained their vigil, without success, until about 4:00 o'clock in the morning of February 2.

At 10:00 a. m. that day the officers began to question Pierce at the precinct station. He first denied any knowledge of the robbery but made a complete confession when the officers told him they had found a button at the filling station in the pool of blood which had flowed from Jordan's wounds, that it appeared to have come from his coat,

1. McNabb v. United States, 1943, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819.

and that the coat and the button would be submitted to the F.B.I. laboratory for examination.

One hour after the questioning began, at 11:00 o'clock, a stenographer typed the confession and Pierce signed it. About 1:30 p. m. on February 2 the officers took Pierce and Taylor (who by that time had been apprehended) to the hospital where Jordan identified both as the men who had attacked him. Pierce orally confessed to Jordan in the presence of Taylor and the officers and told him he was sorry for what he had done. The two men were taken before the United States Commissioner later in the afternoon, probably about 4:00 o'clock, and the charge of robbery was registered against them.

Taylor entered a plea of guilty and was sentenced. Pierce pleaded not guilty. At his trial evidence concerning the laboratory test showed the bloody button had come from Pierce's overcoat, and Jordan identified him as the man who had held him while Taylor was striking him. His oral and written confessions, received in evidence over his objection, were not repudiated as he did not testify.

Taylor, who was brought from prison for the purpose of testifying, exculpated the appellant, saying he had borrowed Pierce's overcoat and was wearing it when he committed the crime. He also said one of the police officers struck Pierce with a copy of the Washington telephone directory—an unwieldy weapon—during the interrogation on the morning of February 2. This statement was denied by the two policemen and by the young lady who typed the confession. The question whether the police had physically mistreated Pierce was submitted to the jury under appropriate instructions. The verdict indicates the jury either disbelieved Taylor's testimony concerning brutality or, believing it, disregarded the confession and based the finding of guilt upon other evidence.

Pierce asks us to reverse his conviction on the ground that he should have been brought before a committing magistrate at 9:00 a. m., the opening of the business day on February 2, following his arrest the night before at 11:30 p. m., and that detention for two hours after 9:00 o'clock constituted unnecessary delay within the meaning of Rule 5(a) of the Federal Rules of Criminal Procedure[2] and under the McNabb ruling. He does not contend that detention from 11:30 p. m., February 1, until 11:00 o'clock the next morning was coercion which caused his confession. He did not testify, and does not argue, that detention during that period amounted to psychological pressure which induced him to disclose his guilt. He merely says his detention was illegal because it was unnecessary, and his confession which followed it was therefore inadmissible.

Assuming for the discussion the accuracy of the appellant's premise that he was unlawfully detained, we question the validity of his conclusion that illegal detention, which did not induce him to disclose his guilt, made his confession inadmissible. The McNabb case, cited by the appellant, does not support his proposition; for there the confessions were expressly held to be the fruit of unlawful detention aggravated by other ill treatment. We have found no authority tending to support Pierce's contention except the Upshaw opinion's[3] restatement of the McNabb ruling

> "* * * that a confession is inadmissible if made during illegal detention due to failure promptly to carry a prisoner before a committing magistrate, whether or not the 'confession is the result of torture, physical or psychological * * *.'"

---

2. Rule 5(a), 18 U.S.C.A., is in part as follows:

"(a) Appearance before the Commissioner. An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available commissioner or before any other nearby officer empowered to commit persons charged with offenses against the laws of the United States. * * *"

3. Upshaw v. United States, 1948, 335 U. S. 410, 413, 69 S.Ct. 170, 172, 93 L. Ed. 100.

This language, considered literally and alone, seems to be a holding that a confession made by one in custody who has not been taken before a magistrate is inadmissible for that reason only, even though the disclosure was not induced by the detention nor by any other form of coercion. We understood it as having that effect when we wrote our opinion in the Garner [4] case soon after Upshaw v. United States was handed down. Further study of the Upshaw opinion causes us to conclude that the Court did not intend to enlarge and extend the original McNabb ruling. Its restatement of the rule should be read, we think, in the light of the facts of the McNabb case, as the Upshaw opinion twice refers to the factual situation from which the McNabb confessions sprang. At 335 U.S. 411, 69 S.Ct. 171, it is said:

"* * * In the McNabb case we held that confessions had been improperly admitted *where they were the plain result* of holding and interrogating prisoners without carrying them 'forthwith' before a committing magistrate as the law commands." (Emphasis supplied.)

and again 335 U.S. at page 413, 69 S.Ct. at page 171:

"* * * The McNabb confessions were thus held inadmissible because the McNabbs were questioned while held in 'plain disregard of the duty enjoined by Congress upon federal law officers' promptly to take them before a judicial officer. *In the* McNabb *case*

*there were confessions 'induced by illegal detention' * * *."* (Emphasis supplied.)

This emphasis upon the fact that the McNabb confessions were produced by illegal detention leads us to believe that the Court intended its restatement of the McNabb ruling to be limited to situations of that sort.

Moreover, the Court disregarded the period of Upshaw's detention subsequent to confession and prior to presentment before a magistrate, and said his illegal detention prior to confession rendered his disclosures inadmissible, thus adhering to a similar holding in United States v. Mitchell, 1944, 322 U.S. 65, 64 S.Ct. 896, 898, 88 L.Ed. 1140. Although Upshaw did not claim his detention coerced him into confessing, and the opinion did not expressly attribute that effect to it, the Supreme Court may have regarded Upshaw's detention, coupled with intermittent questioning, from the time of his arrest at 2:00 a. m. on Friday until the time of his confession shortly after 9:00 a. m. on Saturday, a period of 31 hours, as coercive on its face. We think it probable that the Court did so regard it, for otherwise the Upshaw confession was invalidated on the sole ground that it was made while the accused was being unlawfully detained, although the confession was not the product of the unlawful detention but was voluntarily given. This would have been to exclude the confession "only as a punitive measure against unrelated wrongdoing by the police", which the Court said in the

4. Garner v. United States, 84 U.S.App. D.C. 361, 363–364, 174 F.2d 499, 501–502, certiorari denied, 1949, 337 U.S. 945, 69 S.Ct. 1502, 93 L.Ed. 1748, where we said:

"* * * In view of that holding, we must consider it to be a settled principle that, when arresting officers unnecessarily delay taking a prisoner before a committing magistrate, any confession made to them during that delay is inadmissible; and that this is true even though the confession was not induced by the illegal detention nor by any form of coercion, but was voluntarily given."

In like manner the Court of Appeals for the Second Circuit, in Walker v. United States, 1949, 176 F.2d 564, 567,

read the Supreme Court's Upshaw opinion

"* * * as holding that, although admissions may be in fact 'voluntary,' they are nevertheless incompetent, if they are obtained after the time has expired within which the accused should be arraigned, as provided by Rule 5(a) of the Federal Criminal Rules of Procedure, 18 U.S.C.A."

Thus the Second Circuit and this court understood the Supreme Court's Upshaw holding as extending the original McNabb ruling to cases where the confession was *not* induced by illegal detention. We have come to believe, for the reasons stated in the text above, that these interpretations of the Upshaw restatement are incorrect.

Mitchell opinion is "an indirect mode of discipling misconduct" which should not be used. Nothing in the Upshaw case indicates an intention to modify that expression in the Mitchell opinion.

█ With the restatement of the McNabb ruling construed in connection with the McNabb facts, it is our view that Upshaw v. United States does not overturn the principle theretofore established: that illegal detention before presentment to a committing magistrate, standing alone and without more, does not invalidate a confession made during its continuance, *unless the detention produced the disclosure.* In United States v. Mitchell, supra, the Supreme Court noted that Mitchell's disclosures "were not elicited through illegality" and said their admission in evidence "therefore, would not be use by the Government of the fruits of wrongdoing by its officers." [5] Former Chief Justice Groner of this court said in Boone v. United States, 1947, 82 U.S.App.D.C. 359, 360, 164 F.2d 102, 103:

> "* * * In the Mitchell case the Supreme Court said, as it had said in the McNabb case, that inexcusable detention for the purpose of extracting evidence from the accused is both wrong and unlawful, but pointed out that while this is true, detention, standing alone, does not affect the admissibility of the confession except in a case in which it appears that the disclosure is induced by it. In short, that unlawful detention, without more, does not require rejection of a confession otherwise admissible. And that is this case."

█ For the reasons given we reject Pierce's contention that his illegal detention —if it was illegal—invalidated his confession even if it did not produce it. The question then becomes (still assuming for the

discussion, without deciding, that he was unlawfully detained) whether his illegal detention, and his interrogation during a part of the last hour of it, must be presumed to have been coercion which caused him to confess.

█ It was not necessary, as appellant concedes, to take him to a magistrate at 11:30 p. m. or later during the night. Leviton v. United States, 2 Cir., 1951, 193 F.2d 848; Garner v. United States, 1949, 84 U.S. App.D.C. 361, 364, 174 F.2d 499, 502. The period of detention before confession during which Pierce might have been presented to the Commissioner, and of which he complains, was therefore the two hours between 9:00 and 11:00 a. m. As we have noted, there was no proof and there is no contention that this detention caused him to confess. We do not think a reasonable mind could, without proof, regard that short period—nor indeed the whole period from 11:30 p.m. and 11:00 a. m.—as so coercive in effect as to wring Pierce's confession from him.

█ But, should Pierce's detention be thought to have been so oppressive as to induce his confession, the disclosure was not inadmissible unless the detention which preceded it was illegal. If he was being lawfully held, his confession being otherwise admissible was properly received in evidence. United States v. Carignan, 1951, 342 U.S. 36, 72 S.Ct. 97. Pierce had the burden of showing he was illegally detained; that is, of showing that the delay in presenting him to a magistrate was unreasonable. Leviton v. United States, 193 F.2d at page 854; Walker v. United States, 2 Cir., 176 F.2d 564, 567. He made no effort whatever to prove unreasonableness of delay, but apparently depended entirely on the theory that, as the business day began at 9:00 o'clock and presumably the Commis-

5. The Court said, 322 U.S. at page 70, 64 S.Ct. at page 898:
"* * * But in any event, the illegality of Mitchell's detention does not retroactively change the circumstances under which he made the disclosures. These, we have seen, were not elicited through illegality. Their admission, therefore, would not be use by the Government of

the fruits of wrongdoing by its officers. Being relevant, they could be excluded only as a punitive measure against unrelated wrongdoing by the police. Our duty in shaping rules of evidence relates to the propriety of admitting evidence. This power is not to be used as an indirect mode of disciplining misconduct."

sioner was available at that time, any delay after 9:00 o'clock was unreasonable.

■ We do not agree. In simple justice to Pierce, the officers should have checked their information, as they did in part at least, before formally charging him before a magistrate. While the bloody button which apparently came from his coat, and his known intimate association with Taylor, gave ground for strong suspicion of his guilt, the laboratory test might have shown that the button was not from his coat and, instead of identifying him as one of his attackers, Jordan might have definitely said he was not one of the two men who robbed him. Even after the confession the officers took the precaution to see whether Jordan would identify Pierce before they took him to the Commissioner, and the laboratory test was made later. It is our view that Pierce's detention until 11:00 a. m. cannot be said to be unreasonable. We agree with the reasoning of the Ninth Circuit's able opinion in Haines v. United States, 1951, 188 F.2d 546, at page 551, and particularly with Judge Bone's statement that the timing of a confession should not be regarded as of more importance to the law than either its truth or its voluntary character.

We hold that Pierce must pay the penalty for his crime.

Affirmed.

BAZELON, Circuit Judge (concurring in the result).

The record indicates that the committing magistrate was not available until 10:00 a. m.[1] on the morning following the accused's arrest. That was also the time[2] at which the police officers started to question the accused. He immediately denied knowledge of the crime, whereupon he was shown the telltale overcoat button and told that it would be submitted to the Federal Bureau of Investigation for analysis. It was at that point that he confessed, although the state-

ment of confession was not reduced to writing until 11:00 a. m.[3] Under these circumstances, I do not think the confession was made either during or because of "unnecessary delay" in taking the accused before a committing magistrate within the meaning of Rule 5(a) of the Federal Rules of Criminal Procedure. Cf. United States v. Mitchell, 1944, 322 U.S. 65, 64 S.Ct. 896, 88 L. Ed. 1140; Haines v. United States, 9 Cir., 1951, 188 F.2d 546, certiorari denied, 1951, 342 U.S. 888, 72 S.Ct. 172; United States v. Leviton, 2 Cir., 1951, 193 F.2d 848.

1. J.A., p. 45. Although appellant contends he should have been taken before a committing magistrate at 9:00 a.m., there is no showing that as a practical matter other committing magistrates were available before 10:00 a.m., at which time the regular office hours of committing magis-

trates in the District of Columbia begin. See discussion in United States v. Leviton, 2 Cir., 1951, 193 F.2d 848, 854, and cases cited therein.

