UNITED STATES
v.
SKEETERS et al.
Cr. No. 23461–CD.

United States District Court,
S. D. California, Central Division.
June 8, 1954.

Laughlin E. Waters, U. S. Atty., for the Southern Dist. of California, Louis

Lee Abbott and Manuel L. Real, Asst. U. S. Attys., Los Angeles, Cal., for plaintiff.

Kenneth E. Cleaver, Los Angeles, Cal., for defendant Herbert Marcellus Hogan.

TOLIN, District Judge.

The defendants are charged with the illegal possession of gold. The matter is before the Court now on defendant Hogan's motion, pursuant to Rule 41 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., to suppress evidence and have returned to him a certain statement signed by him while in custody, upon the grounds that at the time the statement was given the defendant was being illegally detained and the circumstances of taking the statement amounted to coercion.

The power of this Court to grant the relief requested is not challenged, and in not challenging it the United States recognizes settled law. See Rule 41, Fed.Rules Crim.Proc.; McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819; Anderson v. United States, 318 U.S. 350, 63 S.Ct. 599, 87 L.Ed. 829; In re Fried, 2 Cir., 161 F.2d 453, 1 A.L.R.2d 996; United States v. Hoffman, 2 Cir., 137 F.2d 416; United States v. Haupt, 7 Cir., 136 F.2d 661; Garner v. United States, 84 U.S.App.D.C. 361, 174 F.2d 499; Nueslein v. District of Columbia, 73 App.D.C. 85, 115 F.2d 690; United States v. Pollack, D.C.N.J., 64 F.Supp. 554.

The first question for determination is whether the defendant was being illegally detained, which is a question of fact for the Court. Rule 41, Fed.Rules Crim.Proc.; In re Fried, 2 Cir., 161 F.2d 453. The facts have been presented here only by affidavits of the defendant and the Secret Service Agent who obtained the statement.[1]

Defendant states that he was arrested about 1:00 p. m. on Saturday, February

---

1. Submission of facts by affidavit is approved procedure in these matters. See United States v. Adelman, 2 Cir., 107 F. 2d 497; In re Fried, 2 Cir., 161 F.2d 453. Oral examination of affiants often strengthens or weakens the showing initially made by affidavits. Accordingly, the Court always invites cross-examination of affiants. Neither party cared to cross-examine in this case.

13, 1954, at Indio, California, by a United States Secret Service Agent, and that he was questioned on that date by the arresting Agent and other officers, including an Agent of the Federal Bureau of Investigation. He states that he was further questioned on the following Sunday, Monday, and on Tuesday morning. After this last questioning, defendant states that he was presented with a three-page, single spaced, typewritten document and was informed by the Special Agent that it could not be used against him at any time. He states that on the basis of such an assurance, he signed the statement without reading it. Defendant further states that his home is in Oregon and that at the time of his arrest he was without sufficient funds or knowledge to employ local counsel, and that these facts were known to the arresting officers and that he was never advised before signing the statement that he could obtain counsel without cost. He states that after he signed the statement, he was taken to Riverside, California, 75 miles from Indio, where he was arraigned and first informed as to his right to counsel and of the incriminating effect which might attach to any subsequent statements. He concludes that he has, since obtaining counsel, seen the statement and considers it wholly inaccurate. He states that he is now seeking the exclusion and return of any statements, oral or written, made by him prior to his arraignment, upon the basis that any such statements were not voluntary and were obtained while he was being unreasonably detained by officers of the United States Government.

The affidavit of the Special Agent of the Secret Service is the only evidence offered in opposition to the motion. The Special Agent states that he did "interview" the defendant on Sunday, Monday, and Tuesday following the defendant's arrest. He alleges that he did inform the defendant that he had a right to counsel and that it was not necessary for him to make any statement, and that any statement he did make could be used against him. He states that present "at the time", that is, apparently at the time of the warning, were a Special Agent of the Federal Bureau of Investigation and the Indio Chief of Police. He further states that on Tuesday the defendant was shown "a statement covering the interviews" and that the statement was given to the defendant "with instructions to read the statement". The statement is not in question and answer form and obviously purports to be a narrative exposition of the events. The Special Agent states that the defendant initialed and signed the statement in the presence of two Indio police officers. The Special Agent further states that no threats of any kind were made "by anyone in the presence of the affiant", to induce the defendant to make any statement. He states that all statements of the defendant were made freely and voluntarily. The Special Agent finally states that the defendant "was not released to the custody of the affiant" until approximately 11:00 a. m. Tuesday and that he was arraigned in Riverside at approximately 4:00 p. m. that day. There is no suggestion of investigation of Hogan or prosecution of him by any state or municipal authority except as such local officers might have been active in investigation of the facts upon which prosecution is now being had only by Federal authority. Insofar as there might be criminality in those acts pleaded, it seems to be a situation redressable only under the laws of the United States. It is noteworthy that even if not released to the custody of the Special Agent until the late hour, defendant had been freely available to Government investigators for questioning, and the detention appears to have been for the purpose of this, and not a State prosecution.

Neither affidavit sets forth the facts surrounding defendant's arrest and detention as completely as might be desired. Many matters are left to implication. Some of the missing facts were suggested by counsel during argument,

but, except where agreed upon, they cannot, of course, be considered as evidence.

Insofar as the Special Agent's affidavit goes, the Court accepts the factual statements therein as true. However, the language of the affidavit specifically leaves many suggested areas of inquiry unanswered including the important detail of whether or not this Special Agent or any other Federal Officer was present at the time of the arrest, and particularly whether or not any other Federal agent questioned the defendant at any time. The affidavit does not specifically refute the allegation by defendant that he was arrested by this Special Agent and questioned by him on Saturday. The Special Agent does allege that the defendant "was not released to (his) custody" until Tuesday, which does seem to indicate, but does not directly aver, that he did not have any previous official custody. Whatever those facts were, the Special Agent obviously had free access to, and some degree of supervision and control over, the defendant for at least two days previous to the time he alleges he obtained "official custody" of the defendant. The nature and extent of this control is not explained. There is no allegation, or even intimation, that the Government could not have obtained custody at any time following the defendant's arrest nor is there any reason given why the arraignment was not had before the United States Commissioner prior to Tuesday.

The Court does not mean to be overly technical in its reading and analysis of the Special Agent's affidavit, but it cannot escape the impression that the language is couched very particularly so as to avoid many important factual areas. For instance, in the face of defendant's contention that he did not read the statement, the Special Agent does not state that the defendant read, or appeared to read, the statement, but rather states that "* * * the statement was given to him with instructions to read the statement". Other language seems to clearly indicate that the statement was not prepared by the defendant. The statement itself is couched in investigator's language and it is unlikely in the extreme that it is the unedited statement of its signatory. The affidavit also very deliberately restricts the negation of threats or promises of immunity to any such statements made "in the presence of the affiant". This language suggests the possibility of such acts outside his presence. The affidavit of the defendant also specifically states that he was not informed of his right to counsel *without cost to him*. The Special Agent's answering affidavit merely states that the defendant was informed that he "had the right to counsel". These particular discrepancies are pointed out only to indicate that the Agent's affidavit does not directly answer or reply to the specific charges of the defendant. None of the above specified factual omissions are supplied on information or belief nor by the affidavits of the other officers involved. This information would be peculiarly available to the prosecution. At the time of oral argument, the Court specifically asked if the Special Agent of the Secret Service was present, and was informed that he was. However, the prosecution made no offer to place him under oath for examination.[2] The Court cannot escape the conclusion that the entire matter of meeting defendant's charges concerning the circumstances surrounding the taking of the statement has been carefully avoided in many of its important aspects.

The affidavit of the defendant does specifically state that he was arrested by the deposing Special Agent and that this Special Agent informed him that the written statement could not be used against him. In these matters the Court finds against the defendant. However, it does seem reasonable to assume that the defendant might have confused the presence of the Special

---

2. The defendant, pursuant to waiver, was not present.

Agent with the formal act of the arrest; or have confused his presence at or near the time that any representations of immunity were made with his actually making such representations. Again the prosecution's affidavit leaves unanswered many factual implications. This is especially important in the light of availability of the Special Agent in the Court Room where the Judge granted all requested time for presentation of the motion and resistance thereto.

On the basis of the statements in both affidavits and the implications inherent therein, and on the admissions of both counsel at the time of argument, the Court finds the following factual situation to have existed surrounding the making of the written statement:

Defendant was arrested for investigation of the offense with which he is now charged, or for some related crime cognizable under Federal law, by Indio City Police about 1:00 p. m. on Saturday, February 13th. Present at that time, in addition to the City officers, were a Special Agent of the Secret Service and a Special Agent of the Federal Bureau of Investigation. Why the Federal officers did not act to procure defendant's detention in this peculiarly Federal case, is not explained but Federal officers were investigating the very case now before the Court for prosecution. Defendant was questioned that Saturday afternoon by the Indio City Police and the Special Agent of the Federal Bureau of Investigation, and, on the following Sunday, Monday, and Tuesday, by the Special Agent of the Secret Service, the Special Agent of the Federal Bureau of Investigation, and the Indio City Police. On Sunday, the Special Agent of the Secret Service informed the defendant that any statement he might make could be used against him and that he did have the right to counsel. It was not, however, specifically spelled out to the defendant that he had the right to counsel without any cost to him, a factor which

is important *only* as it relates to the statements being "induced by" the illegal detention or having their basis in "psychological pressures". We do not mean to indicate that there is an absolute duty on investigating officers to always inform persons under arrest of the availability of legal counsel without cost to them, if and when the proceedings reach the court stage. This is a duty apparently imposed only on the Court.[3] However, it is a consideration in determining the "psychological pressures" present during the detention and the causative relationship between the prolonged, illegal detention and the statements or confessions given during such a period. There is no suggestion that defendant was offered opportunity or facilities to communicate with friends, relatives, or counsel. The defendant was many hundreds of miles from his home and had no available funds with which to obtain private counsel, and the arresting officers were aware of this situation. It is further found that a United States Commissioner was located 75 miles by a convenient modern route from the point of defendant's detention and would have been readily available to arraign the defendant *at least* by Monday morning, and probably within hours of the time of arrest.

The prosecution emphasizes that the defendant was *officially* in the custody of the City Police. There is a specific California requirement that an arrested person be brought before a committing magistrate without unnecessary delay. California Penal Code, § 849. On the basis of this Statute, the Court finds that the official detention by the City Police after Monday morning was illegal and that the Federal officers were aware of, collaborated in, and certainly took advantage of the illegal detention by the City Police. In this regard, the situation is particularly synonymous with the factual situation in Anderson

3. Compare Rules 44 and 15(c), Fed.Rules Crim.Proc., which set out the duties of the court, *with* Rules 5(b) and 40(b) (2), which set out the duties of the commissioner.

v. United States, 318 U.S. 350, 63 S.Ct. 599, 87 L.Ed. 829. There the Federal officers worked in collaboration with state officers to secure confessions of the defendants. The state officers did the arresting and detaining. The detention was rendered illegal under state law by the failure of the state officers to bring the defendants before a magistrate. The Court there said at page 356 of 318 U.S., at page 602 of 63 S.Ct.:

"Therefore, the fact that the federal officers themselves were not formally guilty of illegal conduct does not affect the admissibility of the evidence which they secured improperly through collaboration with state officers. Gambino v. United States, 275 U.S. 310, 314, 48 S.Ct. 137, 72 L.Ed. 293; Byars v. United States, 273 U.S. 28, 33, 34, 47 S.Ct. 248, 71 L.Ed. 520."

The situation before the Court now is clearly within the prohibitions of the Anderson case, and hence the statements made after the detention became illegal are not admissible against the defendant.

Furthermore, the Court specifically finds that although, *officially*, the defendant may have been in the custody of the City Police, the Federal officers could have demanded official custody of the defendant at any time following arrest and that such a demand would have been complied with by the Indio Police. On the basis of these facts, the Court further finds that after late Monday afternoon Federal officers had unnecessarily delayed taking the defendant before the nearest available Commissioner. The Court thus concludes that after that time the defendant's detention was illegal as being in violation of the provisions of Rule 5 of the Federal Rules of Criminal Procedure. The prompt taking of a detained person before a Commissioner is as important a duty as is the prompt investigation of crime.

If these are not the facts and the defendant's representations are inaccurate or misleading, the blame must lie with the prosecution for not sufficiently negating defendant's specific statements and the implications necessarily inherent therein, and in not supplying obviously important information and, further, in wording the statement of the Special Agent of the Secret Service so as to specifically exclude several suggested situations. The personnel of the prosecuting office is known to the Court as capable, diligent and learned. This suggests that the failure to present a stronger case arises from lack of favorable facts, rather than from a failure to present facts.

■ In the face of these facts and the resulting illegality of the detention, the prosecution seeks to avoid the exclusion and return of the statements on the basis of the assertion that the statements were voluntary and, as such, not subject to condemnation. The prosecution's position is, re-stated, that even though the statements were obtained during an illegal detention, they are, nevertheless, admissible unless proved involuntary. As authority, the prosecution merely quotes from the Fifth Amendment of the Constitution. No judicial interpretations are cited. Thus it falls on the Court to do all the legal research in this matter.

The language of United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140, and the holding in Upshaw v. United States, 335 U.S. 410, 69 S.Ct. 170, 93 L.Ed. 100, would seem to place considerable doubt on the prosecution's position. As the Court said in the Upshaw case, 335 U.S. at page 413, 69 S.Ct. at page 172:

"* * * The Mitchell case, 322 U.S. at page 68, 64 S.Ct. at page 897, however, reaffirms the McNabb rule that a confession is inadmissible if made during illegal detention due to failure promptly to carry a prisoner before a committing magistrate, whether or not the 'confession is the result of torture, physical or psychological * * *.'"

The circuit courts have even more clearly stated the rule. In United States v. Hoffman, 2 Cir., 137 F.2d 416 at page 421, in referring to the McNabb, Anderson and Haupt cases, the Court says:

"* * * These cases appear to make it clear that even the voluntary character of statements prior to arraignment does not make them admissible."

Again in Garner v. United States, 84 U.S.App.D.C. 361, 174 F.2d 499 at pages 501–502, in referring to the McNabb and Upshaw cases, the court says:

"In view of that holding, [Upshaw] we must consider it to be a settled principle that, when arresting officers unnecessarily delay taking a prisoner before a committing magistrate, any confession made to them during that delay is inadmissible; and that this is true even though the confession was not induced by the illegal detention nor by any form of coercion, but was voluntarily given."

Involuntary confessions have always been clearly and undeniably condemned and excludable. The newer and much discussed development of exclusion on the basis of the illegality of the detention obviously has added some new concept and reason for exclusions. See 11 Cyclopedia of Federal Practice, Sec. 47.68–47.71. Whether we declare statements given during an illegal detention inadmissible because the illegal detention has rendered them involuntary, or whether we declare them inadmissible merely because given during an involuntary detention, we have the same result and the distinction is of no consequence. A recent line of cases has developed the proposition that in order to render a statement or confession inadmissible, it is necessary that it be, at least, "induced by" the illegal detention. Allen v. United States, 91 U.S.App.D.C. 197, 202 F.2d 329, 335; Pierce v. United States, 91 U.S.App.D.C. 19, 197 F.2d 189, 194. This apparently is something considerably less than "involuntary".

However, in the matter before the Court now, it is not necessary to base the exclusion on the illegal detention alone. It is the Court's express finding that the defendant's statements made on Tuesday were not voluntary to the degree required by law or good conscience and were, in fact, induced by the illegal detention. While it might be conceivable that after there has been an unnecessary delay and the detention has become illegal, there may exist certain circumstances that do not bring substantial psychological pressures and influences to bear on the defendant, such circumstances would be rare, and emphatically do not exist here. Under the factual circumstances present here, it is the Court's finding that in view of defendant's inability to procure counsel and his long distance from home and friends, he was under sufficient psychological pressure to render his statements involuntary. The affidavit of the Special Agent of the Secret Service does allege that defendant made the statements freely and voluntarily. However, in the absence of any recital of the facts surrounding the giving of the statements, his conclusion is of little, if any, value.

The prosecution also contends that a "Motion to suppress a confession signed by the defendant on the ground that detention was allegedly illegal due to the failure promptly to take the defendant before a Commissioner for arraignment, should be made the basis of an objection at the trial and not the basis of a pre-trial motion." In support of its position, the prosecution cites United States v. Tuzzo, D.C.N.J., 9 F.R.D. 466. This Court cannot agree with the reasoning expressed there. To interrupt a criminal trial to give the matter the amount of time necessary to an effective study of the facts and law involved, would be contrary to every precept of the requirements of the speedy and economical administration of justice. This Court has found it necessary to devote several days to the study of this problem. To hold a jury in abeyance during mid-trial

for such a length of time is not efficient. Furthermore, it would seem to be within the distinct interest of the prosecution to have determined, prior to trial, whether or not such an obviously important item of evidence as a confession is going to be admitted in evidence or not. The determination of such a matter prior to trial has this Court's unqualified approval. To wait until trial to make such a motion, is to waive the right to make it unless it be shown there were special circumstances. The language of Rule 41, Fed.Rules Crim.Proc., the rule under which this motion is brought, speaks quite definitely on the matter:

"The motion shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing."

See United States v. Di Re, 2 Cir., 159 F.2d 818, affirmed 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210; In re Fried, 2 Cir., 161 F.2d 453; Takahashi v. United States, 9 Cir., 143 F.2d 118; Price v. Johnston, 9 Cir., 125 F.2d 806; United States v. Edmonds, D.C., 100 F.Supp. 862; 4 Barron, Federal Practice and Procedure, Sec. 2406. See also, Cogen v. United States, 278 U.S. 221, 49 S.Ct. 118, 73 L.Ed. 275; Segurola v. United States, 275 U.S. 106, 48 S.Ct. 77, 72 L. Ed. 186; Rose v. United States, 9 Cir., 149 F.2d 755; Rocchia v. United States, 9 Cir., 78 F.2d 966; Peters v. United States, 9 Cir., 97 F.2d 500.

Motion granted, to the extent that the statement is suppressed and cannot be used at the trial. It will remain in the Court's file where it is now, identified as Government's Exhibit I for identification. It will be sealed by the Clerk, the seal to be broken only upon an order of the Court.

Defendant's counsel will prepare findings, conclusions and order in accordance with this opinion.