Gladys M. TILLOTSON, Appellant,

v.

UNITED STATES of America, Appellee.

No. 12503.

United States Court of Appeals District of Columbia Circuit.

Argued June 29, 1955.

Decided Feb. 14, 1956.

Petition for Rehearing Denied March 8, 1956.

Writ of Certiorari Denied June 11, 1956.

See 76 S.Ct. 1055.

Edgerton, Chief Judge, dissented.

Mr. James J. Laughlin, Washington, D. C., with whom Mr. Albert J. Ahern, Jr., Washington, D. C., was on the brief, for appellant.

Mr. Fred L. McIntyre, Asst. U. S. Atty., with whom Messrs. Leo A. Rover, U. S. Atty., Lewis Carroll and Arthur J. McLaughlin, Asst. U. S. Attys., were on the brief, for appellee.

Before EDGERTON, Chief Judge, and WASHINGTON and DANAHER, Circuit Judges.

DANAHER, Circuit Judge.

Appellant seeks reversal of her conviction on three counts of an indictment charging malicious burning of another's property in violation of Title 22, Section 403 of the District of Columbia Code 1951.[1] The fires occurred in the District on August 17, 1953, January 11, 1954, and March 15, 1954, on which dates appellant had been a hostess and social director at a boarding house called Wesley Hall, and upon each occasion, as she testified, she was in her room. During an extensive investigation, appellant became acquainted with police officers who on April 28, 1954, asked her to accompany them to precinct headquarters for interrogation. There, after some questioning, she admitted setting the fires and personally typed and signed a statement. Having received sentences of one year on each count, to run concurrently, she now appeals, urging mainly that her confession was erroneously admitted in evidence, but also that the government should have been required to prove express malice toward the Wesleys, her employers, owners of the burned property, that the trial judge should have

---

1. Title 22, § 403, D.C.Code 1951, provides:

"Whoever maliciously injures or destroys, or attempts to injure or destroy, by fire or otherwise, any movable property not his own, of the value of $50 or more, shall be imprisoned for not less than one year and not more than ten years, and if the value of the property be less than $50 by a fine not exceeding $200 or by imprisonment not exceeding one year, or both. (Mar. 3, 1901, 31 Stat. 1327, ch. 854, § 848; Aug. 12, 1937, 50 Stat. 629, ch. 599.)"

charged, as requested, that fires are presumed to be accidental, and that various other alleged errors, not here enumerated, require reversal. We think the Government is entitled to its verdict.

Appellant, citing Upshaw v. United States, 1948, 335 U.S. 410, 69 S.Ct. 170, 93 L.Ed. 100, in effect asks us to rule that her confession was improperly received in evidence simply because it was taken by police before she was arraigned. But the Upshaw case commands no such result, as may be demonstrated by a brief reference to its rationale developed against the background of recent but earlier decisions. The Court in McNabb v. United States, 1943, 318 U.S. 332, 346, 63 S.Ct. 608, 615, 87 L.Ed. 819, made it clear that "The mere fact that a confession was made while in the custody of the police does not render it inadmissible." Moreover, police are within their rights in questioning an accused. Ziang Sung Wan v. United States, 1924, 266 U.S. 1, 14, 45 S.Ct. 1, 69 L.Ed. 131. The Court explained fully what some have called the McNabb rule when it wrote in United States v. Mitchell, 1944, 322 U.S. 65, 67, 64 S.Ct. 896, 897, 88 L.Ed. 1140: "[T]he [McNabb] defendants were illegally detained under aggravating circumstances: one of them was subjected to unremitting questioning by half a dozen police officers for five or six hours and the other two for two days. * * *Inexcusable* detention *for the purpose* of *illegally extracting evidence* from an accused, and the successful *extraction* of such inculpatory statements by *continuous questioning for many hours under*

*psychological pressure,* were *the decisive features* in the McNabb case which led us to rule that a conviction on such evidence could not stand."[2] Again in the Mitchell case, 322 U.S. at page 68, 64 S. Ct. at page 897, referring to McNabb, the Court said "We adhere to that decision and *to the views on which it was based.*" Thus, Mr. Justice Frankfurter, finding that the Mitchell disclosures were not elicited through illegality, concluded that "Their admission, therefore, would not be use by the Government of the fruits of wrongdoing by its officers." Id., 322 U.S. at page 70, 64 S.Ct. at page 898.[3] Contrariwise, in Upshaw v. United States, supra, 335 U.S. at page 414, 69 S.Ct. at page 172, not only were the confessions the " 'fruits of wrongdoing' " by the police, but the Court expressly noted that the police officer had admitted that the accused "was *illegally detained* for at least thirty hours *for the very purpose* of securing these *challenged confessions.* He thereby refutes any possibility of an argument that after arrest he was carried before a magistrate 'without unnecessary delay.' " Cf. United States v. Carignan, 1951, 342 U.S. 36, 72 S.Ct. 97, 96 L.Ed. 48.[4] No comparable situation is presented in the record here.

We do not doubt that some have mistaken the Upshaw case to narrow the McNabb rule despite the explanation in Mitchell and the discussion in the Carignan case. But several Circuits, including our own, have considered the problem and substantial uniformity of discernment is patent.[5] As we put it in Allen v. United States, supra note 5, 91

2. Italics throughout have been supplied by the writer.

3. Appellant's counsel here is not alone in failing to perceive that the federal court rule discussed by Mr. Justice Frankfurter is not to be confused with that applied in cases coming from the state courts. As to the latter he said "we are concerned solely with determining whether a confession is the result of torture, physical or psychological, and *not the offspring of reasoned choice.*" 322 U.S. at page 68, 64 S.Ct. at page 897. (Emphasis supplied.)

4. Decided November 13, 1951.

5. After the Carignan decision, certiorari was denied November 26, 1951, in Haines v. United States, 342 U.S. 888, 72 S.Ct. 172, 96 L.Ed. 666, opinion below, 9 Cir., 1951, 188 F.2d 546, and rehearing was denied 1952, 342 U.S. 911, 72 S.Ct. 300, 96 L.Ed. 681; and see United States v. Leviton, 2 Cir., 1951, 193 F.2d 848, certiorari denied 1952, 343 U.S. 946, 72 S. Ct. 860, 96 L.Ed. 1350; Pierce v. United States, 91 U.S.App.D.C. 19, 197 F.2d 189, certiorari denied 1952, 344 U.S. 846, 73 S.Ct. 62, 97 L.Ed. 658; Allen

U.S.App.D.C. at page 202, 202 F.2d at page 329:

"* * * illegal detention before presentment to a committing magistrate, standing alone and without, more, does not invalidate a confession made during its continuance, unless the detention produced the disclosure." See also Pierce v. United States, supra, 91 U.S.App.D.C. 19, 197 F.2d 193, note 5.

We mention these cases particularly for we were asked to overrule them in Hines v. United States, No. 12002, where we sat en banc. By an equally divided court, the judgment of conviction was affirmed without opinion.[6] Having in mind the rule so stated, in its application, "* * * the burden of showing unreasonableness of delay in arraignment rests upon the defendant * * *." United States v. Leviton, 2 Cir., 1951, 193 F.2d 848, 854; White v. United States, 5 Cir., 1952, 200 F.2d 509, 512; Pierce v. United States, supra note 5, 91 U.S.App.D.C. at page 23, 197 F.2d 189; cf. Nardone v. United States, 1939, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307. There must be a showing "that the signing of said confession was induced by the delay", Duncan v. United States, 5 Cir., 1952, 197 F. 2d 935, 937, certiorari denied 1952, 344 U.S. 885, 73 S.Ct. 185, 97 L.Ed. 685, where Circuit Judge Holmes so interprets United States v. Carignan and other cases cited. Cf. Tyler v. United States, 1951, 90 U.S.App.D.C. 2, 6–8, 193 F.2d 24, certiorari denied 1952, 343 U.S. 908, 72 S.Ct. 639, 96 L.Ed. 1326.

Here, in the absence of the jury, the trial judge carefully examined into the circumstances preceding the appel-

lant's admissions. He was bound to determine whether there was unreasonable delay in arraignment such as would render detention illegal in view of the requirement of Rule 5(a) of the Federal Rules of Criminal Procedure, 18 U.S.C.A. that an arrested person be taken before the nearest available commissioner "without unnecessary delay",[7] and if the detention were shown by the appellant to be illegal, whether such detention produced the disclosure.[8] Wesley Hall is a boarding house comprising some forty row-brick buildings. On August 17, 1953, the shower curtains in three different bathrooms on two floors were on fire at about the same time, apparently ignited by matches found at the scene. In the January 11, 1954 fire, the tapes on two venetian blinds had been ignited and the blinds had partially burned. Twelve feet away, but without intervening fire damage, a lamp shade had been completely consumed by fire. In the March 15, 1954 fire, the spread and sheets overhanging a bed had been burned, but not the portion covering the bed, located in a room opposite that of the appellant. There was found no defective wiring or other comparable possible cause of such peculiar burning of non-contiguous objects. During weeks of investigation all persons living and working at Wesley Hall were suspect, and numerous interrogations were conducted, until by April 28, 1954, the search narrowed to the appellant. That day officers informed her of their desire to question her further. She sought and received permission to change her clothes, after which she accompanied the officers, including a policewoman, to the precinct headquarters.

v. United States, 1952, 91 U.S.App.D.C. 197, 202 F.2d 329, certiorari denied 1952, 344 U.S. 869, 73 S.Ct. 112, 97 L.Ed. 674, cited "cf." in Brown v. Allen, 1953, 344 U.S. 443, 476, 73 S.Ct. 397, 97 L.Ed. 469.

6. Certiorari was denied, Hines v. United States, 350 U.S. 949, 76 S.Ct. 324.

7. "The police could hardly be expected to make a murder charge on such uncertainties without further inquiry and in-

vestigation." United States v. Carignan, supra, 342 U.S. at page 44, 72 S.Ct. at page 101, 96 L.Ed. 48, in Pierce v. United States, supra note 5, 91 U.S.App.D.C. at page 23, 197 F.2d at page 194, we pointed out: "In simple justice to Pierce, the officers should have checked their information, as they did in part at least, before formally charging him before a magistrate."

8. Allen v. United States; Pierce v. United States, supra note 5.

Commencing about 10:30 A.M., she was questioned as to certain details, including those involving her own background. She was treated at all times with respect and courtesy, with occasional "breaks" for coffee and cokes consumed by the police and appellant. Between 12 noon and 1 P.M., she admitted setting the various fires. She was told she did not have to make a statement, that any such statement if made might be used against her, and that any statement was to be made of her own free will. She nevertheless volunteered to prepare a statement. Asking the officers only for the specific dates involved, she sat at a typewriter and typed out her own statement, composed in her own words, containing such items of fact as she herself desired to insert.

■ There was a delay of some one and one-half to a possible two and one-half hours while the police intermittently questioned the appellant. She, like others, had been interrogated during the course of the investigation and the police desired to check her own statements against the statements of other Wesley Hall residents and employees and against the physical facts apparent in so strange a series of fires, burning unrelated objects, without discernible cause, but with every indication of incendiary origin. The interests of society and of the appellant herself required a reasonable opportunity to ascertain the degree of complicity, if any, of the appellant before a serious criminal charge might properly be lodged against her. Here was no "device for breaking the will of the prisoner on long, relentless, or repeated questionings."[9] In United States v. Leviton, supra, 193 F.2d at page 855, the majority had pointed out that if *illegal* detention exists, the evidence "which is its fruit" is unusable, and had quoted from the Haines case, supra note 5, insofar as it treated of whether a delay "was *reasonably necessary* in order to give the officials here involved an opportunity to check on and verify the available facts he had given them, this in order to determine whether justice and reason called for filing a criminal charge against him."[10] With a dangerous "firebug" loose in a boarding house where possibly hundreds of persons were endangered by mysterious fires occurring at night, it was of utmost importance to all concerned that the incendiary be located. The detention was not "inexcusable," the questioning was not shown to be "continuous" and such as to constitute "torture" in any form, and the admissions could properly have been found to be the "offspring of reasoned choice." What constitutes "unnecessary delay," or a reasonable time within which an accused must be brought before a committing magistrate, must be determined in the light of the circumstances and the facts in a particular case and is a question to be settled initially by the trial judge. Here the trial judge weighed the testimony and found that the delay was not unreasonable and that the confession was not coerced, nor the "fruit" of illegality. We cannot say that he erred in ruling that the appellant had failed to sustain her burden before him. In addition, under appropriate instruction, he submitted to the jury the question of "voluntariness." The jury having heard all of the witnesses proferred, including the appellant herself, accepted the confession. We find no error in admitting the confession in evidence.

Certain other of appellant's claims of error may shortly be treated. Proof that the burning was intentional established the corpus delicti. State v. Whisler, 1942, 231 Iowa 1216, 3 N.W.2d 525, 528. Thus proof of such willful burning eliminated the possibility of an acci-

9. Mr. Justice Douglas, concurring in United States v. Carignan, 1951, 342 U.S. 36, 46, 72 S.Ct. 97, 102, 96 L.Ed. 48. Cf. note 7.

10. Only Mr. Justice Black and Mr. Justice Douglas were of the opinion that certiorari should be granted in the Leviton case. Memorandum by Mr. Justice Frankfurter, 1952, 343 U.S. 946, 72 S.Ct. 860, 96 L.Ed. 1350.

dental igniting of the various objects, and it was unnecessary for the Government to prove that appellant harbored malice toward the Wesleys or anyone else. Lichtenwalter v. United States, 1951, 89 U.S.App.D.C. 187, 190 F.2d 36; State v. Pisano, 1928, 107 Conn. 630, 141 A. 660, 661; Crow v. State, 1916, 136 Tenn. 333, 189 S.W. 687, 688, 1 A.L.R. 1160. The charge correctly instructed the jury as to the principles which must govern on this point.

Appellant insists that the jury should have received an instruction that all fires are presumed to be accidental. Had there been no evidence to the contrary, it would have been presumed that the fires were accidental. Here the proof was overwhelming that the origin of the fires was neither accidental nor natural, on the contrary they had been deliberately set. There was, therefore, no basis for the requested charge. Ricketts v. State, 1951, 192 Tenn. 649, 241 S.W.2d 604–605; State v. Lizotte, 1938, 109 Vt. 378, 197 A. 396, 399.

Although the opinion testimony complained of seems properly to have been received since appellant conceded the expert qualifications of the fire department inspector, we do not so decide and find it unnecessary to discuss the point further. At most it affected only one of the counts, and the conviction will be upheld if it can be sustained on any count where the sentence did not exceed that which might properly have been imposed on that count. Wanzer v. United States, 1953, 93 U.S.App.D.C. 412, 208 F.2d 45; Abrams v. United States, 1919, 250 U.S. 616, 619, 40 S.Ct. 17, 63 L.Ed. 1173.

What we have said disposes of the case and renders further treatment unnecessary for we are satisfied that there was no error affecting substantial rights.

Affirmed.

WASHINGTON, Circuit Judge (concurring in the result).

 I agree that there was no error affecting substantial rights, and that the judgment must be affirmed. As to the admissibility of the appellant's confession, I think it is enough for the purposes of this case to conclude (as I do) that there was no unreasonable delay in taking appellant before a magistrate, and no coercion. In my view there is no need to consider here whether the Upshaw case should be carried to the full extent of its dictum[1] or be regarded as limited to its facts. Clearly, lack of coercion alone—or lack of illegal detention alone—does not render a confession admissible. But where there is neither coercion nor illegal detention, and no suggestion of inducement through promises, the confession should be admitted. I think that is this case.

EDGERTON, Chief Judge, dissents.

---

1. "* * * a confession is inadmissible if made during illegal detention due to failure promptly to carry a prisoner before a committing magistrate * * *." Upshaw v. United States, 1948, 335 U.S. 410, 413, 69 S.Ct. 170, 172, 93 L.Ed. 100, quoted in United States v. Carignan, 1951, 342 U.S. 36 at page 43, 72 S.Ct. 97, at page 101, 96 L.Ed. 48.