**COFFEY v. POLIMENI.**

No. 12659.

United States Court of Appeals
Ninth Circuit.

April 25, 1951.

Davis & Renfrew, Anchorage, Alaska, Bronson, Bronson & McKinnon, San Francisco, Cal., for appellant.

McCutcheon & Nesbett, and Buell A. Nesbett, all of Anchorage, Alaska, for appellee.

Before HEALY and ORR, Circuit Judges, and LEMMON, District Judge.

HEALY, Circuit Judge.

Appellee Polimeni had judgment in damages against appellant Coffey for the latter's negligence in acting upon an application for fire insurance. Polimeni's complaint was in two counts or causes of action, one sounding in tort for negligence, the other being for breach of an alleged promise to obtain insurance. The court ordered a dismissal of the latter cause at the

close of plaintiff's proof but allowed the case to go to the jury on the issue of negligence.

Coffey maintained an insurance office at Anchorage, Alaska, where he had for years acted as agent or broker for numerous fire insurance companies. His letterheads bore the legend Coffey Insures Everything—Remember?" On two occasions previous to the one in question he had procured fire insurance for Polimeni. Polimeni was a long-time resident of a village called South Naknek, which, in insurance parlance, is an "unprotected" area. He acquired a restaurant building at that place and enlarged and substantially rebuilt it from moneys earned as a fisherman. Apparently the establishment was completed in March 1948. Polimeni is an illiterate Italian with imperfect understanding of English, and in addition suffers from an impediment of speech. In the correspondence he had with Coffey concerning insurance for the restaurant his letters were written for him by the local schoolmistress. Since this correspondence forms the basis of the suit it is essential to set it out.

On March 30, 1948 Polimeni wrote Coffey as follows:

"Dear Sir:

"At this time I am writing concerning an insurance policy covering my new restaurant in So. Neknek, Alaska, which houses private living quarters on the second floor and the restaurant on the first floor.

"Please inform me as to the type or types of policies necessary to insure the building and all fixtures including automatic pump, light plant, dishes, meat saw, and food supplies.

"What form of policy is necessary to cover a seasonal beer and wine supply brought in in the fall valued at ($3,000.00), three thousand dollars?

"Sincerely,
"/s/ ANTONIO POLIMENI."

Under date of April 9, 1948 Coffey responded:

"Dear Mr. Polimeni:

"Re: Fire Insurance on Building occupied as Restaurant & Dwelling.

"In reply to your letter of March 30th wish to advise that the fire insurance rate on both building and contents is $3.00 per $100 of insurance for one year.

"It is necessary to place a specific amount of insurance on the building and a specific amount on equipment and supplies. Beer and wine would be insured under stock. We enclose form which indicates how the insurance is divided.

"If insurance is ordered, we will need to have a description of the location of the property. If the land is unsurveyed so you cannot give us lot and block numbers, please advise how far distant your building is from the Post Office or the Public School Building. Also advise the construction and occupancy of any buildings within 100 feet of your building.

"We trust this is the information you desire.

"Very truly yours,
"EDW. D. COFFEY."

On April 17, 1948 Polimeni countered with the following letter to Coffey:

"Dear Sir:

"Having received your reply to my inquiry concerning my insurance, I am supplying necessary description of the property and equipment.

"The main restaurant building is (1000') one thousand feet from the South Naknek Territorial School Building and approximately (300') three hundred feet from the Post Office.

"1. Main Building: 30'–30'.

"Restaurant—two story building housing booths, counter, kitchen, pastry room, laundry on the first floor, with five rooms on second floor for living quarters for owner and hired assistants, and basement (18'–20') eighteen by twenty feet providing storage capacity for restaurant supplies and special compartment for automatic pump connected to the well inclosed within the building with descent from kitchen. Attached to kitchen and pertaining to service thereof are kitchen range, hot and cold water tank, and sink.

"2. 8'–10' building 50' from main building.

"This building is used for housing light plant providing electrical power for restaurant and used as a repair shop.

"3. 6'–8' 20 feet from main building.

"Separate restrooms with shields for entrances. These buildings mentioned have tin roofs and are to be insured en masse for ($6,000.00) six thousand dollars.

Equipment and Supplies.

"Furniture:

"Five beds complete with all season bedding, three wardrobe bureaus with clothing of owner and assistant, six chairs, two tables, one sewing machine, and one phonograph (electric).

"Fixtures:

"Washing machine, electric iron, complete line of China and silverware for serving one hundred capacity, and bowls, platters, and beer and wine glasses.

"Machinery:

"Gasoline engine, automatic water pump, 8 K. W. light plant.

"The furniture, fixtures, and machinery are to be insured for ($1,500.00) fifteen hundred dollars.

"Stock:

"Complete line of food supplies for restaurant operation for six months including small amounts of beer and wine. The stock is to be insured for ($2,500.00) two thousand five hundred dollars.

"I trust this is the complete and necessary description for my insurance application.

"Thank you.
    "Sincerely,
        "/s/ ANTONIO POLIMENI.
"Received April 24, 1948."

The closing sentence of this communication concededly constituted an application for insurance. The letter, as indicated by the notation thereon, was received by Coffey on April 24, 1948. It was read by a Miss McConnell, Coffey's office manager, and handed by her to the fire insurance girl in the office with instructions to write Polimeni for a breakdown of insurance desired on each of the buildings. The fire insurance girl misplaced the letter and did not answer it. The communication was not referred to Coffey himself, and in the ordinary course of the office routine the girl would have signed the reply. No check-off method was maintained to determine whether the fire insurance girl carried out instructions given her in such instances.

No reply having been received to this letter, Polimeni wrote on June 1, 1948 as follows:

"Dear Mr. Coffey:

"I have written you before concerning my insurance for my restaurant and I have received no reply.

"I would like to hear from you immediately and learn the particulars and premium of the policy. Are there corrections to be made or what needs to be done?

"Please reply immediately.

"Thank you.
    "Sincerely,
        "/s/ ANTONIO POLIMENI."

This letter was received and read by office manager McConnell. On reading it she recalled Polimeni's letter of April 17. She asked the fire insurance girl for it, but the girl was unable to locate it. A brief search was made for the letter without success and Miss McConnell instructed the fire insurance girl to write to Polimeni and "get the information again." As a result on June 4, 1948 the following letter was written:

"Dear Mr. Polimeni:

"Re: Fire Insurance on Building occupied as Restaurant & Dwg.

"We are in receipt of your letter of June 1st in regard to your insurance. We wrote you the following letter, mailed April 9, 1948, but evidently it was lost, so we will quote same:

[Then follows a verbatim copy of Coffey's letter of April 9, heretofore quoted.]

"We trust that this is the information you desire.
        "Yours very truly,
            "EDW. D. COFFEY."

It does not appear that there was regularly scheduled mail communication between Anchorage and Naknek, and the record fails to indicate with any degree of clarity whether this letter of June 4 actually reached Polimeni. A copy of it was

attached to Coffey's answer in the case, and on the trial a carbon copy was introduced along with the remaining correspondence. Sometime between June 10th and 15th thereafter Polimeni, who is a fisherman by occupation, left the restaurant in charge of one Ruhl and went to fish for king salmon. It appears from Ruhl's testimony that at that season the canneries had opened up and the restaurant business was poor. The generality of people, Ruhl said, went to eat at the canneries where meals were cheap and beer was to be had for nothing. Ruhl closed down the restaurant two weeks later and went salmon fishing himself. About July 20, 1948 the main building, equipment and stock were completely destroyed by fire while Ruhl and Polimeni were on the fishing grounds.[1]

■ The first contention urged on the appeal is that Polimeni was negligent in failing to heed or reply to Coffey's letter of June 4, hence on familiar principles he can not prevail. However, the court instructed the jury specifically with respect to the claim of contributory negligence predicated on this letter, informing them that negligence on Polimeni's part contributing to the loss would bar recovery. The burden of proof on this issue was concededly on the defendant, where the court placed it. In the condition of the proof the jury were at liberty to conclude that the letter was not in fact received, and to recall that in any event Coffey had already been put in possession of the information which the letter sought to elicit. The issue having been fairly submitted to the jury and having been resolved against the defendant, we are not disposed to upset the verdict on this ground.

That Coffey was grossly negligent in his handling of the application hardly admits of doubt. In a letter written to Polimeni on July 23, 1948 (after the fire and before Coffey's knowledge of it) he apologized "for having mislaid your letter of April 17 giving us the details of the property you wish to have insured." In this belated communication a further breakdown on the amount of insurance as among the buildings was requested. The letter concluded with a request for a breakdown "so we may issue your policies." The remark may be taken as indicating not only that Coffey regarded the risk as insurable but that he had been all along in position to obtain the coverage applied for.

There was, moreover, testimony by an insurance broker of long experience, who had very recently been employed in Coffey's office, to the effect that the information contained in Polimeni's letter of April 17 was such as would have permitted the obtaining of immediate insurance among the companies Coffey represented. It was not necessary, nor was it the customary practice, so this witness testified, that Coffey await receipt of the requested breakdown before arranging for coverage. A wire to Seattle, he said, would readily have procured protection overnight.

■ Counsel argue that, assuming negligence, the correct rule is that no action will lie against an insurance agent for delay in acting on an application where no breach of legal duty to obtain insurance appears. They concede that this view is at variance with the general trend of authority and with the great bulk of the decisions dealing immediately with the subject.[2] A few commentators and an occasional judge have criticized this line of decisions as unorthodox or unsupported by reason,[3] but they ap-

---

1. The outside toilet and the small structure housing the light plant were undamaged. The jury apparently deducted $500, testified to be the value of these structures, plus $300 as the unpaid insurance premium, returning a verdict for $9,200. The correctness of the amount of the award, as such, is not seriously subjected to challenge here.

2. See, among other cases, Morris v. Summerl, C.C., D.Pa., 1808, Fed.Cas.No. 9837; Manny v. Dunlap, C.C., D.Ia., 1869, Fed.Cas.No.9047; Carter v. Man-

hattan Life Ins. Co., 11 Hawaii 69; Boyer v. State Farmers' Mut. Hail Ins. Co., 86 Kan. 442, 121 P. 329, 40 L.R.A., N.S., 164; Duffy v. Bankers' Life Ass'n, 160 Ia. 19, 139 N.W. 1087, 46 L.R.A., N.S., 25; Rezac v. Zima, 96 Kan. 752, 153 P. 500.

3. Consult article by Professor Prosser, "Delay in Acting on an Application for Insurance," 3 Chicago Law Review, p. 39. The numerous cases bearing pro and con on the subject are collected in this article.

pear to us to announce a salutary rule. The thought they stand for is that the agent or company owes the applicant for insurance what amounts to a legal obligation to act with reasonable promptness on his application, either by providing the desired coverage or by notifying the applicant of the rejection of the risk so that he may not be lulled into a feeling of security or put to prejudicial delay in seeking protection elsewhere. Implicit in the cases is a recognition that these transactions are fundamentally unlike ordinary commercial or business dealings where mere profit is the stake, so prone is the failure of insurance protection to result in irretrievable disaster to the individual. Those engaged in the insurance business understand perfectly the peculiar urgency of the need for prompt attention in these matters.

Affirmed.