Katherine RETTIG, Appellant,

v.

UNITED STATES of America, Appellee.

No. 12697.

United States Court of Appeals District of Columbia Circuit.

Argued in Banc May 8, 1956.

Decided Oct. 26, 1956.

Wilbur K. Miller, Bastian and Burger, Circuit Judges, dissented.

Mr. Myer Koonin, Washington, D. C., for appellant. Mr. Harry S. Weidberg, Washington, D. C., also entered an appearance for appellant.

Mr. Lewis Carroll, Asst. U. S. Atty., with whom Messrs. Leo A. Rover, U. S. Atty. at the time brief was filed, Harold H. Titus, Jr., and Nathan J. Paulson, Asst. U. S. Attys., were on the brief, for appellee. Mr. Oliver Gasch, U. S. Atty., also entered an appearance for appellee.

Before EDGERTON, Chief Judge, and PRETTYMAN, WILBUR K. MILLER, BAZELON, FAHY, WASHINGTON, DANAHER, BASTIAN, and BURGER, Circuit Judges, sitting in banc.

EDGERTON, Chief Judge, announced the judgment and division of the court as follows:

This conviction for second degree murder is reversed and the case is remanded to the District Court for a new trial on the ground that the trial court erred in refusing to exclude police testimony concerning appellant's alleged oral confessions that she stabbed her husband. Chief Judge EDGERTON and Circuit Judges PRETTYMAN, BAZELON, FAHY, WASHINGTON and DANAHER vote for reversal on that ground. Circuit Judges WILBUR K. MILLER, BASTIAN and BURGER vote for affirmance. Judge BAZELON files an opinion in which Judge EDGERTON concurs. Judge DANAHER files an opinion in which Judge PRETTYMAN concurs. Judges FAHY and WASHINGTON file a separate statement. Judge WILBUR K. MILLER files a dissenting opinion in which Judges BASTIAN and BURGER concur.

BAZELON, Circuit Judge, with whom EDGERTON, Chief Judge, concurs.

The issue is whether the rule adopted by the Supreme Court in McNabb v. United States, 1943, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819, requires exclu-

---

sion of the testimony concerning appellant's oral confession. We conclude that it does, because, like the McNabbs, appellant confessed as a result of being "questioned while held in 'plain disregard of the duty enjoined by Congress upon Federal law officers' promptly to take them before a judicial officer." Upshaw v. United States, 1948, 335 U.S. 410, 413, 69 S.Ct. 170, 171, 93 L.Ed. 100. And in that view of the case, we do not reach the question of legal effect of psychological mistreatment of the appellant during questioning.

Rule 5(a) of the Federal Rules of Criminal Procedure directs that arrested persons must be taken "without unnecessary delay before * * * [an] officer empowered to commit persons * * *."[1] Rule 5(b) empowers the committing officer to admit such persons to bail and directs him to inform such persons of the complaint against them, their right not to make a statement and that any statement they do make may be used against them.[2] Emphasing that this required procedure "checks resort to those reprehensible practices known as the 'third degree' * * *," 318 U.S. at page 344, 63 S.Ct. at page 614, the Supreme Court in McNabb established a rule of evidence excluding confessions "secured through * * * flagrant disregard of the procedure which Congress has commanded * * *." Id., 318 U.S. at page 345, 63 S.Ct. at page 615. In describing the circumstances in which the commitment requirements were violated there, the Court mentioned not only that the McNabbs had not been brought promptly before a magistrate, but in ad-

dition described the unremitting and obviously oppressive interrogation to which they had been subjected. Id., 318 U.S. at pages 344–345, 63 S.Ct. at pages 614–615.

Thereafter, in United States v. Mitchell, the Court said, "Inexcusable detention for the purpose of illegally extracting evidence from an accused, and the successful extraction of such inculpatory statements by continuous questioning for many hours under psychological pressure, were the decisive features in the McNabb case * * *." 1944, 322 U.S. 65, 67, 64 S.Ct. 896, 897, 88 L.Ed. 1140. Mr. Justice Reed, concurring in the result, considered this "a desirable modification of the McNabb case." Id., 322 U.S. at page 71, 64 S.Ct. at page 899. The confession was held admissible, however, on the sole ground that there had been "no disclosure induced by illegal detention * * *." The accused had confessed "within a few minutes of his arrival at the police station," and his subsequent illegal detention for eight days did not "retroactively change the circumstances under which he made the disclosures." Id., 322 U.S. at pages 69, 70, 64 S.Ct. at page 898.

Four years later, the Court decided Upshaw v. United States, 1948, 335 U.S. 410, 69 S.Ct. 170, 93 L.Ed. 100. Upshaw had confessed after being held for interrogation without arraignment for more than 30 hours, and his confession had been admitted at the trial. This court, despite the Government's confession of error, affirmed the conviction on the ground that there had been no coercion, physical or psychological, during

1. "An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available commissioner or before any other nearby officer empowered to commit persons charged with offenses against the laws of the United States. When a person arrested without a warrant is brought before a commissioner or other officer, a complaint shall be filed forthwith."

2. "The commissioner shall inform the defendant of the complaint against him, of his right to retain counsel and of his right to have a preliminary examination. He shall also inform the defendant that he is not required to make a statement and that any statement made by him may be used against him. The commissioner shall allow the defendant reasonable time and opportunity to consult counsel and shall admit the defendant to bail as provided in these rules."

the illegal detention.[3] We stressed, as the Supreme Court pointed out, that Upshaw's "detention unlike McNabb's, 'was not aggravated by continuous questioning for many hours by numerous officers.'" 335 U.S. at page 412, 69 S.Ct. at page 171. In holding the confession inadmissible under the McNabb rule, the Supreme Court made clear that in McNabb it had described the oppressive interrogation simply "to show that the record left no doubt that the McNabbs were not promptly taken before a judicial officer as the law required, but instead were held for secret questioning * * *." 335 U.S. at page 413, 69 S.Ct. at page 171. The Court added: "The McNabb confessions were thus held inadmissible because *the McNabbs were questioned while held in 'plain disregard of the duty enjoined by Congress upon federal law officers' promptly to take them before a judicial officer.*" Ibid., emphasis supplied. The Court pointed out that its *holding in Mitchell* "was only that Mitchell's subsequent illegal detention did not render inadmissible his prior confessions," *ibid.;* and it declared that under the McNabb rule " * * * a confession is inadmissible if made during illegal detention due to failure promptly to carry a prisoner before a committing magistrate, *whether or not the 'confession is the result of torture, physical or psychological * * *.'*" Ibid., emphasis supplied. The dissenting justices, per Mr. Justice Reed, found the majority opinion inconsistent with the Mitchell explanation of McNabb, 335 U.S. at page 423, 69 S.Ct. at page 176, and criticized it for holding that "illegal detention alone is sufficient to bar from evidence a confession to the police during that unlawful detention." Id.,

335 U.S. at page 430, 69 S.Ct. at page 180.

In United States v. Carignan, 1951, 342 U.S. 36, 72 S.Ct. 97, 96 L.Ed. 48, the Court adhered to the Upshaw statement of the McNabb rule. Id., 342 U.S. at page 43, 72 S.Ct. at page 101. It held, however, that a murder confession made by one who had been properly arraigned on an assault charge, but not for murder, was not excludable. The Court reasoned that since Carignan had been initially arraigned in conformity with Rule 5(a) "this case falls outside the reason for the rule, *i. e.,* to abolish unlawful detention. Such detention," the Court said, "was thought to give opportunity for improper pressure by police before the accused had the benefit of the statement by the commissioner. Rule 5(b) [F.R. Crim.P., citing Upshaw and McNabb]. Carignan had received that information at his commitment for the assault." Id., 342 U.S. at pages 44–45, 72 S.Ct. at page 101. Thus, Carignan implies that the McNabb rule applies to all confessions made in response to interrogation while the accused is held in violation of Rule 5(a), and hence before he has received the benefits of Rule 5(b).[4]

In two recent state confession cases, the Supreme Court distinguished the coerced confession rule, applicable in state as well as federal courts, from the McNabb rule which applies only in the federal courts. In Brown v. Allen, the Court declared:

"Under the leadership of this Court a rule has been adopted for federal courts, that denies admission to confessions obtained before prompt arraignment *notwithstanding their voluntary character.*

3. 1948, 83 U.S.App.D.C. 207, 168 F.2d 167.

4. Detained without arraignment, "the accused is under the exclusive control of the police * * *." Mr. Justice Douglas, concurring in Carignan, 342 U.S. at page 46, 72 S.Ct. at page 102. The obvious benefit of Rule 5 is that the committing magistrate removes the accused from police control to the control of

the jail warden, beyond the peril of secret interrogation and pressure. If delay in commitment is unavoidable, the danger inherent in continued police control may to some extent be mitigated by the police advising the accused of his rights and affording him the opportunity to consult counsel. See my dissenting opinion in Green v. United States, 1956, 98 U.S.App.D.C. 413, 236 F.2d 708.

* * * *This experiment has been made in an attempt to abolish the opportunities for coercion which prolonged detention without a hearing is said to enhance."* [5]

In Stein v. People of State of New York, the Court likewise indicated that no explicit showing of coercion is required under the McNabb rule. The Court said:

"Petitioners confuse the more rigid rule of exclusion which, in the exercise of our supervisory power, we have promulgated for federal courts with the more limited requirements of the Fourteenth Amendment. This, we have held, did not impose rules of evidence on state courts which bind them to exclude a confession because, *without coercion,* it was obtained while a prisoner was uncounseled and illegally detained." [6]

Prior to the Supreme Court's reversal of our decision in Upshaw, the prevailing view in this jurisdiction had been that relentless questioning or other "aggravating circumstances" were required in order to invalidate a confession made during an illegal detention.[7] In Garner v. United States, the first case to come before this court after Upshaw, we declared:

" * * * * we must consider it to be a settled principle that, when arresting officers unnecessarily delay taking a prisoner before a committing magistrate, any confession made to them during that delay is inadmissible; and that is true even though the confession was not induced by the illegal detention nor by any form of coercion, but was voluntarily given."[8]

This dictum was repudiated three years later by other dictum in Pierce v. United States.[9] We said: "Further study of the Upshaw opinion causes us to conclude

---

5. 1953, 344 U.S. 443, 475, 73 S.Ct. 397, 417, 97 L.Ed. 469, emphasis supplied.

6. 1953, 346 U.S. 156, 187–88, 73 S.Ct. 1077, 1094, 97 L.Ed. 1522, emphasis supplied.

7. In Mitchell v. United States, 1944, 78 U.S.App.D.C. 171, 138 F.2d 426, the first post-McNabb case to come before this court, we took the position that a confession was inadmissible whenever an arraignment statute was violated, whether the confession was "voluntary or involuntary."

Following the Mitchell reversal by the Supreme Court, United States v. Mitchell, 1944, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140, in Sykes v. United States, 1944, 79 U.S.App.D.C. 97, 143 F.2d 140, we held that a "voluntary confession obtained during an illegal detention" was admissible "provided it was not induced by the illegal detention." We took a seemingly contrary position in Akowskey v. United States, 1946, 81 U.S.App.D.C. 353, 354, 158 F.2d 649, 650, holding *simply that since the detention was illegal,* "the incriminating statements of the accused were inadmissible * * *." Subsequently, however, in Boone v. United States, 1947, 82 U.S.App.D.C. 359, 164 F.2d 102, we reverted to the view that an illegal detention did not nullify a *voluntary* confession uttered during its continuance. We read McNabb and Mitchell as holding that a confession was inadmissible only if *induced* by the illegal detention, and distinguished the Akowskey case on the ground that there the confession had been the result of relentless questioning and it was that factor, not the illegal detention *per se,* that had nullified the confession. In Wheeler v. United States, 1947, 82 U.S.App.D.C. 363, 165 F.2d 225, certiorari denied 1948, 333 U.S. 829, 68 S.Ct. 448, 92 L.Ed. 1115; and Alderman v. United States, 1947, 83 U.S.App.D.C. 48, 165 F.2d 622, like Boone decided in 1947, we adhered to the view that a confession is not rendered inadmissible unless *induced* by the illegal detention.

Recently in Watson v. United States, 1956, 98 U.S.App.D.C. 221, 234 F.2d 42, 47–48, we reiterated the requirement that the detention must produce the disclosure, but pointed out that "interrogations * * * had their effect. They became part of the whole net * * * enmeshing [the prisoner] in duress, however subtly applied."

8. 84 U.S.App.D.C. 361, 364, 174 F.2d 499, 502, certiorari denied 1949, 337 U.S. 945, 69 S.Ct. 1502, 93 L.Ed. 1748.

9. 1952, 91 U.S.App.D.C. 19, 197 F.2d 189. In both Garner and Pierce the confessions were held admissible and the con-

that the Court did not intend to enlarge and extend the original McNabb ruling. Its restatement of the rule should be read, we think, in the light of the facts of the McNabb case * * *." [10] We took the same position, again as dictum, in Allen v. United States.[11]

Since the views expressed in the Pierce and Allen cases were dicta, we are not bound by them in deciding this case. We think, with due deference, that the McNabb rule is not limited to the facts of the McNabb case. The holding in Upshaw and language in the Brown and Stein cases, decided by the Supreme Court subsequent to Pierce and Allen, indicate the contrary. Under Brown and Stein, the McNabb rule operates as a sanction against police irregularities that create an *opportunity* for third degree methods by compelling an accused to face his questioners incommunicado, uncounseled, and uninformed of his rights. A confession obtained through secret interrogation during illegal detention is not admissible in evidence, whether or not, as in McNabb, the questioning is not merely secret but is coercive in other respects as well.[12]

We turn now to determine whether the confession in the present case was made in circumstances which bring it within McNabb.

Appellant returned from her employment as a waitress to the apartment where she lived with her husband, at 2:- 20 a. m., Sunday, October 24, 1954. At about 6:15 a. m., she reported to police that her husband had been stabbed while asleep with her on the sofa. Police Sergeant Deenihan described what he saw when he arrived at the apartment shortly after the report. Then he testified that appellant told him that "someone came in, and she didn't know who it was, and that he must have stabbed her husband."

At that point the court granted defense counsel's request for a hearing outside the presence of the jury to determine whether, as the court put it, there had been an "overlong detention." The police testimony was that, in a middle-of-the-night interrogation of appellant 16½ to 19½ hours after her arrest, she told the police she had stabbed her husband after they had fallen asleep together on the sofa.[13]

At the hearing it was established that appellant was placed under arrest at 7:30 a. m., Sunday, October 24, and taken to the Homicide office. From about 8:30 to 9:00 a. m., Sergeant Deenihan questioned her. From about 9:00 to 10:30 a. m., he gave her a lie detector test to which she consented. From about 10:30 to 11:00 a. m., she was at the Identification Bureau. From about 11:00 to 11:- 30 or 11:45 a. m., the Sergeant interviewed her at the Homicide office. From about 12:00 noon to 2:00 p. m., he gave her another lie detector test. From about 2:00 p. m. to "quarter of 3, 3 o'clock" he

victions affirmed on the ground that there had been no unlawful detention.

10. 91 U.S.App.D.C. at page 21, 197 F.2d at page 192.

11. 91 U.S.App.D.C. 197, 202, 202 F.2d 329, 334, certiorari denied, 1952, 344 U.S. 869, 73 S.Ct. 112, 97 L.Ed. 674. Allen's confession came in response to questioning which he had invited by going to the police voluntarily "to talk about the crime." In both the Pierce and Allen cases, the writer of this opinion, without endorsing the court's interpretation of Upshaw, concurred in the result on the ground that the confessions were not made after a period of "unnecessary delay."

12. Even while expressing reliance on Pierce and Allen, we seem to have returned to the straightforward rule which employs as the standard simply whether the confession was obtained through secret interrogation of an illegally detained prisoner. To say, as we did in Watson, supra, note 7, that the interrogations were "subtly applied" duress is not far from saying that a confession obtained through secret interrogation during illegal detention is inadmissible.

13. But, the prosecutor added in his proffer, "almost immediately after that, she said that she doesn't remember stabbing him, and believed that he stabbed himself," and then "her admissions and denials continued for the next 30 minutes."

interviewed her again. Thereafter she was returned to the Homicide office where she remained until "some time after 3:30." She was then sent to the Women's Bureau where she arrived at 4:30 p. m. At 7:45 p. m. she was interviewed for 20 or 30 minutes by an officer from Precinct No. 9, who believed she was awakened for that purpose. She was awakened some time between 12 midnight and 3:00 a. m., Monday morning, and questioned by Sergeants Deenihan and Clark from Homicide for about 40 minutes to an hour. It was during this period of questioning, said the officers, that appellant made the oral confession. Not until approximately 11:15 Monday morning, was appellant taken before the coroner for an inquest.

Upon completion of the Government's evidence at the hearing, the court observed that the period between appellant's arrest and oral confession was "certainly dealing with a long period of time." But the court, the prosecutor and defense counsel thought that illegality of detention was not the sole prerequisite to exclusion of the confession. As the prosecutor expressed it, "a showing * * * of a patent denial of due process by coercion" was required in addition. Defense counsel argued that, although illegal detention in itself is insufficient, sufficient psychological pressure had been shown by the Government's own witnesses to render the confession inadmissible as a matter of law. He subscribed to the interpretation of McNabb expressed in Mr. Justice Reed's dissent in Upshaw v. United States, 1948, 335 U.S. 410, 414, 69 S.Ct. 172, 93 L.Ed. 100, namely, that "pressure short of coercion but beyond mere detention makes confessions inadmissible." Id., 335 U.S. at page 429, 69 S.Ct. at page 179.

On the question of whether the application of the McNabb rule is to be decided by judge or jury, the trial court disregarded McNabb *itself* [14] and followed the line of Mr. Justice Reed's dissent in Upshaw.[15] He determined that the evidence of coercion was not so patent as to justify a conclusion that it existed as a matter of law and that the issue was, therefore, one for the jury. Accordingly, upon the resumption of the trial before the jury, Sergeant Deenihan was permitted to relate the circumstances under which appellant was detained and to testify to the statements alleged to constitute the confession.[16]

The case was submitted to the jury on Mr. Justice Reed's theory that "pressure short of coercion but beyond mere de-

---

14. " * * * it is the duty of the trial court to entertain a motion for the exclusion of evidence [alleged to have been obtained in violation of the commitment procedure] and to hold a hearing * * to determine whether such motion should be granted or denied." 318 U.S. at page 346, 63 S.Ct. at page 616, citing cases involving motions which must be resolved by the court to suppress and return evidence.

So far as we are aware, the question of exclusion under the McNabb rule has been decided by the court in every reported case wherein the rule has been asserted.

15. "Obviously there is a wide range of discretion as to how much psychological pressure is necessary. * * * Under this interpretation of McNabb * * * as in coerced confessions, it should be left to a jury to decide whether there was enough evidence of pressure where the admitted facts do not show improper

pressure as a matter of law." 335 U.S. at page 429, 69 S.Ct. at page 180. But the Supreme Court, in Upshaw, adopted a very different interpretation of McNabb.

16. Although we do not reach the question of the coercive effect upon appellant of the detention and its attendant circumstances, it is clear from Sergeant Deenihan's testimony that appellant was under severe emotional stress during the period of detention. When he questioned her before giving her a lie detector test, he said she could not remember what happened in connection with the stabbing; that she was "just going through a change in life" and, in "the last several years," "there are times that I go to work and I don't even remember working or coming home." Based upon special training he had had in giving lie detector tests, he forecast that the test "wouldn't work" because of appellant's physical changes due to menopause and because

tention" is necessary to make the alleged confession inadmissible. The jury was told that the defense contention as to the confession was based "upon the proposition that there was a psychological pressure brought to bear on her, by virtue of the length of time that she was incarcerated; and this was somewhere from, let us say roughly, 6:30 in the morning until whenever it was, between midnight and 3 in the morning * * *."

The submission of the McNabb question to the jury was clearly erroneous. "It was for the trial judge to determine in accordance with the procedure outlined in McNabb v. United States, whether Rule 5 had been satisfied in accordance with our standards." Watson v. United States, supra, note 7, 234 F.2d at page 48. And, on the facts of this case, that determination should have been to reject the confession testimony. The confession was secured between midnight and 3:00 a. m., 16½ to 19½ hours after arrest and before arraignment, after appellant had been subjected to prolonged questioning at various intervals. We would hold that in these circumstances she was not taken before a committing magistrate "without unnecessary delay" within the meaning of Rule 5(a),[17] and that the confession was produced by interrogation during an illegal detention.

The Government suggests that the delay in arraignment was necessary because the police are not required by Rule 5(a) to take appellant before a committing officer on Sunday. We think this view is without merit. So, apparently, did the trial court.[18] The prosecutor admits that no effort was made on Sunday to take appellant before any officer empowered to commit on the theory that commissioners are unavailable on Sunday.[19] But that theory is refuted, at least in this jurisdiction, by James v. Lawrence, 1949, 84 U.S.App.D.C. 355, 356, 176 F.2d 18, 19, where a preliminary hearing before a commissioner took place at 2:00 p. m. on a Sunday. No language in the rule justifies an exemption of Sunday arrests from the requirement of prompt commitment. To carve out that exemption by holding that delay is automatically "necessary" on Sundays, or at times other than the regular office hours of an available commissioner is, as the Second Circuit has suggested, "unrealistic * * * from both the accused's and the court's standpoint." United States v. Leviton, 2 Cir., 1951, 193 F.2d 848, 854. It would mean that a "week-end or midnight arrest gives the officers all sorts of powers they do not otherwise possess * * * they may then delay the arraignment as much as three days if a holiday succeeds the Sunday." Ibid.

We think the issue of whether there has been an "unnecessary delay" in arraignment must be resolved, in every case, by deciding whether there have been reasonable and bona fide efforts[20]

---

"she was either mixed up or confused, to a point where she didn't know whether she did it or whether some outside prowler did it, or whether her own husband did it"; but he gave her the tests anyway to "calm her, give her a chance to rest"; the inconclusive results of the test confirmed his forecast.

17. "* * * what constitutes 'unnecessary delay,' i. e., reasonable time within which the prisoner should be brought before a committing magistrate, must be determined in the light of all the facts and circumstances of the case." Notes of Advisory Committee, Rule 5(a).

18. [Asst.U.S.Atty.]: This was Sunday, Your Honor, and I don't know of any Commissioner available on Sunday.
The Court: Yes, he is.

[Asst.U.S.Atty.]: He would have to be called at home.
The Court: Of course, I understand that. But he is available, and so are the Municipal Court Judges * * *.

19. Ibid.

20. This was the test applied in Pixley v. United States, 10 Cir., 1955, 220 F.2d 912, 913–914. There the court held there was no "unnecessary delay" in committing, on Monday morning, an appellant taken into custody Saturday morning, but only upon a finding that an effort was made "almost immediately" to seek a commissioner in another city, and that he was unavailable for the weekend. Though no effort was made to take appellant before a district judge in the other city, or before some other

promptly to seek a commissioner or "other nearby officer."[21] And, since "every judge or justice of the United States" is empowered to take arraignments,[22] making about 50 such officers available in the District of Columbia, the good faith effort cannot be confined to a commissioner. It may be that committing magistrates are not as readily available on Sundays or holidays as they are during regular working days. That factor, however, does not conclude the issue of delay, but is only one circumstance to be considered in determining whether the delay is reasonable or necessary. Another circumstance to be considered, but only in the event that it is shown that earlier arraignment was not possible, is whether the police have given the prisoner the benefit of the advisory statement which the committing officer would give under Rule 5(b).[23] Here, even if it could be shown that Sunday arraignment was not possible, the delay would nevertheless be unreasonable and the detention illegal, because the record shows no such advisory statement to the appellant before the inquest.

FAHY and WASHINGTON, Circuit Judges.

We agree with Judge BAZELON'S analysis, in which Judge EDGERTON concurs, of the requirements of the McNabb rule and concur in reversal of the judgment of conviction on the ground that those requirements have not here been met, as well as on the ground that the evidence showed that the confession was involuntary.

DANAHER, Circuit Judge (with whom Circuit Judge PRETTYMAN concurs).

We agree that the conviction must be reversed, but for reasons which will be developed in this opinion.

We do not share the view expressed by Judge BAZELON that McNabb v. United States [1] compels exclusion of the appellant's oral admissions. We believe that before admissions or confessions are to be excluded under the McNabb rule, the inculpatory statements must be shown to have been induced by an illegal detention, to have been elicited through illegality, and thus to constitute fruits of wrongdoing by the officers. The disclosures must have been the result of the unlawful detention. In Hines v. United States, we affirmed without opinion after the trial judge, expressly relying upon our opinions in Pierce v. United States, infra note 11, and Allen v. United States, infra note 12, had refused to exclude confessions not shown to be the product of illegal detention. Certiorari was denied.[2]

As we read it, McNabb is based upon the premise that when there has been inexcusable detention for the purpose of illegally extracting evidence from an accused, coupled with the successful extraction of inculpatory disclosures as a result of continuous questioning for many hours under psychological pressure, the statements of the accused so produced shall not be received.

The Supreme Court has had repeated opportunities to say that its rule of evidence for federal courts means less, but it has declined to do so. Rather than automatically exclude all self implicating statements by an accused while in custody, the Court has said:

"By United States v. Mitchell, 322 U.S. 65, 70–71, [64 S.Ct. 896, 898, 88

committing magistrate, it was not shown that these officers were available over the weekend. Moreover, appellant was immediately advised that "he did not have to make a statement; that any statement he might make could be used against him; and that he was entitled to an attorney." Id., at page 913; see also dissenting opinion in Green v. United States, supra, note 4.

See also Haines v. United States, 9

Cir., 1951, 188 F.2d 546, certiorari denied 1951, 342 U.S. 888, 72 S.Ct. 172, 96 L.Ed. 666.

21. Rule 5(a).

22. 18 U.S.C. § 3041 (1951).

23. See notes 4 and 20, supra.

1. 1943, 318 U.S. 332, 63 S.Ct. 608, 87 L. Ed. 819.

2. 1955, 350 U.S. 949, 76 S.Ct. 324.

L.Ed. 1140], this Court decided that the McNabb rule was not intended as a penalty or sanction for violation of R.S.D.C. § 397, a commitment statute. The same conclusion applies to Rule 5, Federal Rules of Criminal Procedure."[3]

It is true that at one time, as when the Mitchell case[4] was before us, some members of this court, like some members of other Courts of Appeals, thought the McNabb rule must be rigidly defined to bar confessions received during a period of unlawful detention, irrespective of whether or not the detention produced the disclosures. Chief Judge Groner noted the distinction thus in Boone v. United States[5]:

> "But on appeal to the Supreme Court our view was rejected and the Supreme Court itself interpreted its language in the McNabb case wholly contrary to the position now taken by counsel for appellant in this case. In the Mitchell case the Supreme Court said, as it had said in the McNabb case, that inexcusable detention for the purpose of extracting evidence from the accused is both wrong and unlawful, but pointed out that while this is true, detention, standing alone, does not affect the admissibility of the confession except in a case in which it appears that the disclosure is induced by it. In short, that unlawful detention, without more, does not require rejection of a confession otherwise admissible."

After the Boone opinion had been written, we were again faced with the problem in Garner v. United States.[6] There, we reverted to our first interpretation of the so-called McNabb rule, thinking we were required to do so because of the opinion in Upshaw v. United States, infra note 17, which was subsequent to our Boone case. We considered in the Garner opinion the applicability of the new Federal Rules of Criminal Procedure which had become effective as of March 21, 1946. We decided that Rule 5(a) does not command that an arrested person be taken before a magistrate "forthwith,"[7] and that the Rule contemplates circumstances out of which there well may be the possibility of necessary delay. It was decided that the delay in arraigning Garner was not unreasonable and that the confession had been properly received.[8]

While there were yet other cases raising comparable questions, both here and in other circuits, many, perhaps most of them, have been cited in Tillotson v. United States[9] and Watson v. United States.[10] Without further elaboration we come to Pierce v. United States.[11] Once again we considered whether or not an illegal detention which did not induce the accused to disclose his guilt made his confession inadmissible. The opinion by

---

3. United States v. Carignan, 1951, 342 U.S. 36, 42, 72 S.Ct. 97, 100, 96 L.Ed. 48.

4. Mitchell v. United States, 1944, 78 U.S. App.D.C. 171, 138 F.2d 426, reversed 1944, 322 U.S. 65, 64 S.Ct. 896.

5. 1947, 82 U.S.App.D.C. 359, 360, 164 F. 2d 102, 103, citing United States v. Mitchell, 1944, 322 U.S. 65, 70, 64 S.Ct. 896.

6. 1949, 84 U.S.App.D.C. 361, 363–364, 174 F.2d 499, 501–502, certiorari denied 1949, 337 U.S. 945, 69 S.Ct. 1502, 93 L. Ed. 1748.

7. The notes in the files of the Supreme Court will disclose that the committee explored the possibilities of a rule requiring that an arraignment be immediate or that the accused be presented "forthwith" to a committing magistrate. These views were rejected, however, and as promulgated by the Supreme Court itself as of December 26, 1944, Rule 5(a) provides that the accused is to be taken before the nearest committing magistrate "without unnecessary delay."

8. Certiorari was denied 1949, 337 U.S. 945, 69 S.Ct. 1502, 93 L.Ed. 1748.

9. 1956, 97 U.S.App.D.C. 402, 231 F.2d 736, certiorari denied 1956, 351 U.S. 989, 76 S.Ct. 1055.

10. 1956, 98 U.S.App.D.C. 221, 234 F.2d 42.

11. 1952, 91 U.S.App.D.C. 19, 22, 197 F.2d 189, 192, certiorari denied 1952, 344 U.S. 846, 73 S.Ct. 62, 97 L.Ed. 658.

Judge WILBUR K. MILLER explained the gradual crystallization of the true rule to govern such situations. Judge BAZELON concurred in the result, having reached the conclusion that the confession was not made either during or because of unnecessary delay in presenting the accused before a committing magistrate.

The question was again presented in Allen v. United States.[12] Judge WILBUR K. MILLER wrote:

> "For the reasons stated in Pierce v. United States * * * we think the McNabb rule * * * is that *illegal detention before presentment to a committing magistrate, standing alone and without more, does not invalidate a confession made during its continuance, unless the detention produced the disclosure.*"[13] (Emphasis supplied.)

Again Judge BAZELON concurred in the result since he found there had been no unnecessary delay in arraignment.

The rule of the Pierce and Allen cases has since been followed by this court, and, in essence, by other circuits.[14]

Some of our colleagues would strike down the Pierce and Allen cases. They read the McNabb case as commanding that result, not because of express language in the McNabb opinion, but by virtue of what someone says it says. Perhaps any such proposed test can be countered in like vein. For example, Mr. Justice Frankfurter said: "Inexcusable detention for the purpose of illegally extracting evidence from an accused, and the successful extraction of such inculpatory statements by continuous questioning for many hours under psychological pressure, were the decisive features in the McNabb case which led us to rule that a conviction on such evidence could not stand." [15] He added, having explained the Court's own rationale, "We adhere to that decision and to the views on which it was based."[16] Again, in Upshaw v. United States,[17] Mr. Justice Black pointed out that the accused had not been arraigned because the officer thought there was not a sufficient case for the court to hold him, and had he been arraigned, the officer would no longer have been able to question him. Thus, the confessions were the fruits of wrongdoing by the police since the petitioner had been "illegally detained for at least thirty hours for the very purpose of securing these challenged confessions. He thereby refutes any possibility of an argument that after arrest he was carried before a magistrate 'without unnecessary delay.' " [18]

It may prove of interest to note that in the McNabb opinion the Court had said of the accused, "They were not brought before a United States Commissioner or a judge" [19] and again, "He was not taken before a United States Commissioner, or a judge." [20] When the case went back for a new trial, the facts as to the time of arraignment were brought out. The Court of Appeals concluded that the record sustained a finding that the accused had been arraigned so that

> "this circumstance is now out of the case and there is no substantial

---

12. 1952, 91 U.S.App.D.C. 197, 202 F.2d 329, 334, certiorari denied 1952, 344 U.S. 869, 73 S.Ct. 112, 97 L.Ed. 674.

13. Id., 91 U.S.App.D.C. at page 202, 202 F.2d at page 334.

14. See cases collected in Tillotson **v.** United States, ubi, supra note 9.

15. United States v. Mitchell, 1944, 322 U.S. 65, 67, 64 S.Ct. 896, 897, 88 L.Ed. 1140.

16. Id., 322 U.S. at page 68, 64 S.Ct. at page 897.

17. 1948, 335 U.S. 410, 69 S.Ct. 170, 93 L.Ed. 100.

18. Id., 335 U.S. at page 414, 69 S.Ct. at page 172.

19. 318 U.S. at page 334, 63 S.Ct. at page 610; and see the memorandum upon denial of petition for rehearing. 1943, 319 U.S. 784, 63 S.Ct. 1322, 87 L.Ed. 1727.

20. Id., 318 U.S. at page 337, 63 S.Ct. at page 611.

evidence that the confessions were elicited by means of illegal procedure. As pointed out in the McNabb case, supra, 318 U.S. [at] page 346, 63 S.Ct. [at] page 615, 87 L. Ed. 819, 'The mere fact that a confession was made while in the custody of the police does not render it inadmissible.' This quotation was repeated in United States v. Mitchell, 64 S.Ct. 896, 899. The Mitchell opinion embodies a clarification of its McNabb opinion.

"We think that the circumstances in the present setting do not compel the exclusion of confessions upon the ground that they were involuntary." [21]

Thus the McNabbs were convicted, and certiorari was denied.[22]

Judge PRETTYMAN and I are satisfied that since the adoption of the Federal Rules of Criminal Procedure, the application of Rule 5 is to be governed by the Pierce and Allen cases. By applying, not disparaging, the rule to be deduced from Pierce and Allen, we have concluded that the conviction in this case must be reversed.

The record shows that the defense voiced timely objection and moved to exclude the appellant's allegedly inculpatory admissions. The trial judge properly conducted an extensive hearing out of the presence of the jury. But it was the duty of the trial judge thereupon to determine preliminarily whether the motion to exclude should be granted or denied,[23] his ruling to depend upon the facts and circumstances shown, within the Pierce and Allen rule. Assuming, without deciding, that there was no unnecessary delay in arraigning the appellant, there still remained the question of whether or not "the detention produced the disclosure." *

We are of the view that upon the face of events, the motion to exclude the admissions should have been granted. The record develops the setting thus:

Appellant had worked as a waitress on a night shift. She came home from work at about two o'clock on a Sunday morning and, according to her testimony, did some household chores, going to bed between three-thirty and four o'clock in the morning. She was alone in the apartment with her husband. At about six o'clock she aroused a neighbor with word that her husband had been stabbed. From then on she was in the custody of the police. What sleep she had had between four o'clock and six o'clock is a guess (she said she had none), but it could not have been more than two hours. She was questioned at intervals all day Sunday. She was twice given polygraph tests, each test lasting about an hour or an hour and a half, both being "inconclusive," due to her distraught condition. She had no food, having declined lunch. Finally at about eight o'clock Sunday evening she was taken to a room at the Women's Bureau and went to bed. Sometime after one o'clock Monday morning she was aroused and taken downstairs to a witness room or conference room in the Women's Bureau, and the questioning by police officers began. This questioning lasted about three-quarters of an hour, or possibly an hour. At this interview she is said to have confessed orally.

At no time was she warned that anything she said would be used against her, and at no time was she advised of her right to counsel. She at no time saw any of her family or friends.

At all times after early Sunday morning she was obviously the prime suspect in the case, having been alone in the apartment with her husband, having given the alarm, and having made conflict-

---

21. 6 Cir., 1944, 142 F.2d 904, 907.

22. 1944, 323 U.S. 771, 65 S.Ct. 114, 89 L.Ed. 616.

23. McNabb v. United States, 318 U.S. at page 346, 63 S.Ct. at page 616.

* It will be noted from the dissenting opinion by Judge WILBUR K. MILLER that he and Judges BASTIAN and BURGER are in accord with our views as to the McNabb rule and the Pierce and Allen cases.

ing statements to the police from time to time. By her own statement she was always a material witness.

If we assume this woman had worked eight hours on the Saturday night shift and had been awake an hour prior to going to work, she had had no more than two hours' sleep in twenty-seven hours when she went to bed at the Women's Bureau Sunday evening.

It counters our experience and the teaching of the cases, to believe that the police can question such a person, distraught from the circumstances, without food, without rest, off and on from seven o'clock in the morning to eight o'clock at night, and then wake her in the middle of the night, take her out of bed to a conference room, question her again, without warning and without advice as to counsel, and then obtain inculpatory admissions, free from taint. There was no reason for not warning her or advising her of her right to counsel. There was in this case no reason for not booking her, either on probable cause for suspicion of murder or as a material witness.[24] There was no conceivable reason for waking her up at one o'clock in the morning for further questioning except to get a confession or admissions before the morning hour arrived when the officers knew they would have to charge her before a committing magistrate. That the admissions were the product of her detention under the circumstances narrated, seems to us to be perfectly plain, and the disclosures fail to survive the interdiction of the Pierce and Allen rule. The failure of the trier so to rule requires that the conviction be reversed.[25]

WILBUR K. MILLER, Circuit Judge, with whom BASTIAN and BURGER, Circuit Judges, concur, dissenting.

Between 5:30 and 6:00 a. m.[1] Sunday, October 24, 1954, Robert Rettig was stabbed twice as he lay asleep on a couch in the living room of his second-floor apartment. He died soon thereafter. The two stab wounds, either of which would have caused death, were inflicted with a knife or dagger owned by Rettig himself which he kept, in its sheath, as an ornament on a television table in the living room. His common-law wife Katherine was indicted for the killing and a jury found her guilty of second degree murder. She appeals, and a majority of the court reverse her conviction. I dissent.

The principal reason for reversal advanced by the appellant is that an oral confession, attributed to her in the testimony of two police officers, was inadmissible because they said it was given after midnight Sunday when she had been in custody since 7:30 that morning without having been presented to a committing magistrate. In her testimony she did not attribute any coercive effect to the delay in arraignment, nor did she say the alleged confession was induced or extorted by any form of physical or psychological persuasion or coercion. She does not make such claims in argument here. Thus she did not say from the stand and does not say now that she confessed involuntarily. Instead, she stoutly swore she did not confess in the post-midnight interview.[2] She is therefore in a poor position to rely on the McNabb rule[3] and assert that, had she been more promptly arraigned, she would not have confessed. Her testimony makes equally

---

24. D.C.Code § 4–144 (1951) provides that material witnesses who are to be detained shall have suitable accommodations in premises other than those employed for the confinement of persons charged with crime.

25. Watson v. United States, supra note 10.

1. This time range was fixed by the appellant.

2. Whether she did or not was submitted to the jury. It may have agreed with her, basing its verdict on the other evidence of guilt.

3. McNabb v. United States, 1943, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819.

928

difficult the position of those who say she confessed involuntarily.

Nevertheless, despite the inconsistency of doing so, on appeal the appellant invokes the so-called McNabb rule. Solely because the officers were permitted to testify that Mrs. Rettig told them she stabbed her husband, my brothers of the majority reverse her conviction. Some of them think the confession was the result of pressures (which she denied were ever applied to her) and was therefore involuntary, and others think it was inadmissible under the doctrine of the McNabb case, because of the mere lapse of time before arraignment plus what they regard as aggravating circumstances short of coercion. These two theories differ sharply, as will appear.

1. If the confession was involuntarily given, its admission in evidence violated Mrs. Rettig's constitutional right to due process, and it is not necessary to consider whether the other evidence was sufficient to sustain the jury's verdict. This is because the reception of a confession which denies a constitutional right requires reversal, even though the evidence apart from the confession was sufficient to justify the verdict of guilt. Brown v. Allen, 1953, 344 U.S. 443, 475, 73 S.Ct. 397, 97 L.Ed. 469; Malinski v. People of State of New York, 1945, 324 U.S. 401, 404, 65 S.Ct. 781, 89 L.Ed. 1029; Lyons v. State of Oklahoma, 1944, 322 U.S. 596–597, 64 S.Ct. 1208, 88 L.Ed. 1481; Bram v. United States, 1897, 168 U.S. 532, 540–542, 18 S.Ct. 183, 42 L.Ed. 568. This is true in federal as well as in state courts.

2. On the other hand, if Mrs. Rettig's confession was merely inadmissible under the McNabb rule prescribed for federal courts,[4] no constitutional right was involved. The Supreme Court said in the McNabb opinion, and has repeated several times since, that the federal rule does not arise from constitutional sources.[5] That being true, a reviewing court which holds a confession inadmissible because it was obtained in violation of the McNabb rule should not reverse the conviction on that account unless it appears that, with the confession excluded, the remaining evidence was insufficient to support the jury's finding of guilt. This is the indirect teaching of the McNabb and Upshaw cases, in both of which the Supreme Court was at pains to point out that the confessions constituted the basis of the conviction. The Supreme Court said in the McNabb case, 318 U.S. at page 338, 63 S.Ct. at page 612, "Concededly, the admissions made by Freeman, Raymond and Benjamin [McNabb] constituted the crux of the Government's case against them, and the convictions cannot stand if such evidence be excluded." Likewise, in its opinion in Upshaw v. United States, 1948, 335 U.S. 410–411, 69 S.Ct. 170, the Court said, "Pre-trial confessions of guilt without which petitioner [Upshaw] could not have been convicted were admitted in evidence against his objection that they had been illegally obtained." And the Court said in a footnote at page 411 of 335 U.S., at page 170 of 69 S.Ct., "After the evidence was all in, the trial judge stated that without the confessions there was 'nothing left in the case.'" Cf. Garner v. United States, 84 U.S.App.D.C. 361, 364, 174 F.2d 499, 502, certiorari denied 1949, 337 U.S. 945, 69 S.Ct. 1502, 93 L.Ed. 1748.

I cannot concur in the reversal of this conviction on either of the two theories just described and differentiated, for reasons which will be stated separately with respect to each.

1. In my opinion, the confession was not involuntarily given and so was not excludable on constitutional grounds. As I have said, Mrs. Rettig did not claim the confession was obtained from her by any form of coercion or inducement. She simply said she did not confess, thus in effect saying she had not yielded to any sort of pressure. From this I think it follows that the confession cannot logically be said to have been involuntarily

4. 318 U.S. at page 341, 63 S.Ct. at page 613.

5. Brown v. Allen, 344 U.S. at page 476, 73 S.Ct. at page 417.

given, unless it ought to be held as a matter of law that the detention on Sunday and the events and circumstances of that day which preceded the confession were in themselves so oppressive as to induce an involuntary admission of guilt, even though the appellant herself did not claim she had been coerced thereby.

I do not think the delay in arraignment and the events of Sunday amounted *per se* to coercion. The Supreme Court's treatment of the McNabb case confirms me in that view. For the facts assumed and described in the McNabb opinion showed much more prolonged delay in arraignment, much more intensive questioning and, in general, much more psychological pressure than the facts here disclose. Yet the Supreme Court did not hold the McNabb confessions involuntary, and did not reverse the convictions on constitutional grounds. It expressly said its decision was not based on the violation of any constitutional right. Hence I think the experienced trial judge was correct when, after an extensive hearing with the jury absent, he refused to rule that Mrs. Rettig's confession was involuntary as a matter of law on the face of the factual situation, but left it to the jury to decide the question of voluntariness. Cf. Tyler v. United States, 1951, 90 U.S.App.D.C. 2, 6, 193 F.2d 24, 28, certiorari denied 1952, 343 U.S. 908, 72 S.Ct. 639, 96 L.Ed. 1326. My conclusion is there is no basis for reversal on the ground that the confession was obtained in violation of the appellant's constitutional rights.

2. Next to be considered is the second theory, adopted by some of the majority, that the McNabb rule was violated here, from which they seem to think reversal automatically follows. My brothers Edgerton and Bazelon say, "The issue is whether the rule adopted by the Supreme Court in McNabb v. United States * * * requires exclusion of the testimony concerning appellant's oral confession." I suggest they do not state the issue fully. One question is, as they say, whether Mrs. Rettig's confession was inadmissible under the McNabb doc-

trine. But if so, there arises immediately the question whether the conviction should therefore be reversed. For, as I have pointed out above in differentiating the two majority theories, reversal does not necessarily flow from a violation of the McNabb rule of evidence.

Before taking up the two questions which constitute the McNabb issue here, it will be helpful to state in the language of the Supreme Court what the rule is and what it is not. Before doing so, I interject that we of the minority who would affirm are in accord with Judge Danaher's analysis of the McNabb rule and his approval of the Pierce and Allen cases.

In United States v. Mitchell, 1944, 322 U.S. 65, 67, 64 S.Ct. 896, 897, the Court described the McNabb ruling by saying:

"* * * Inexcusable detention for the purpose of illegally extracting evidence from an accused, and the successful extraction of such inculpatory statements by continuous questioning for many hours under psychological pressure, were the decisive factors in the McNabb case which led us to rule that a conviction on such evidence could not stand."

And Mr. Justice Reed, concurring in the result of the Mitchell opinion, said, 322 U.S. at page 71, 64 S.Ct. at page 898:

"As I understand McNabb v. United States, 318 U.S. 322, 63 S.Ct. 608, 87 L.Ed. 819, as explained by the Court's opinion of today, the McNabb rule is that where there has been illegal detention of a prisoner, joined with other circumstances which are deemed by this Court to be contrary to proper conduct of federal prosecutions, the confession will not be admitted. Further, this refusal of admission is required even though the detention plus the conduct do not together amount to duress or coercion. * * *"

In Upshaw v. United States, 1948, 335 U.S. 410, 413, 69 S.Ct. 170, the Supreme

Court [6] said the McNabb rule is "that a confession is inadmissible if made during illegal detention due to failure promptly to carry a prisoner before a committing magistrate, whether or not the 'confession is the result of torture, physical or psychological * * *.'" [7]

With respect to the Upshaw statement of the McNabb rule we said in Garner v. United States, 84 U.S.App.D.C. 361, 364, 174 F.2d 499, 502, certiorari denied 1949, 337 U.S. 945, 69 S.Ct. 1502:

"Under this rule, however, there still remains open in every case the question whether the detention was illegal; that is, whether the delay in presenting the prisoner to a magistrate was unnecessary. For Rule 5(a) of the Federal Rules of Criminal Procedure does not command that an arrested person be taken before a magistrate 'forthwith.' It provides that the officer 'shall take the arrested person without unnecessary delay before the nearest available commissioner or before any other nearby officer empowered to commit persons charged with offenses against the laws of the United States.' This phrasing envisages the possibility of necessary delay. It would be an extension of the Upshaw opinion to construe it as holding that a confession is inadmissible if given *after delay* in presenting

the defendant to a magistrate because such a construction would completely ignore the word 'unnecessary' in Rule 5(a)."

In this case, a murder suspect was taken into custody about 7:30 Sunday morning and was carried before a committing magistrate at 9:00 o'clock Monday morning. I do not think this delay was *prima facie* "unreasonable" within the meaning of Rule 5(a). Mrs. Rettig made no effort to prove that it was, although the burden of doing so rested upon her. Tillotson v. United States, 231 F.2d at page 738; Pierce v. United States, 91 U.S.App.D.C. at page 23, 197 F.2d at page 193; White v. United States, 5 Cir., 1952, 200 F.2d 509, 512; United States v. Leviton, 2 Cir., 1951, 193 F.2d 848, 854; United States v. Walker, 2 Cir., 1949, 176 F.2d 564, 567. I know of no requirement that committing magistrates be on duty all day Sunday. The police worked all that day tracking down leads, such as appellant's statement that an unknown intruder killed her husband, which might have exonerated her. Nor does it appear that arraignment was delayed in order to extract the confession. Nobody said, as did an officer in the Upshaw case, that the suspect was held for that purpose. For these reasons, it is my opinion that Mrs. Rettig's confession was not barred by the McNabb rule. [8]

6. With Chief Justice Vinson and Justices Reed, Jackson and Burton dissenting.

7. While I think we correctly interpreted the Upshaw case in our opinions in Tillotson v. United States, 1956, 97 U.S. App.D.C. 402, 231 F.2d 736; Allen v. United States, 1952, 91 U.S.App.D.C. 197, 202 F.2d 329; and Pierce v. United States, 1952, 91 U.S.App.D.C. 19, 197 F.2d 189, all of which the Supreme Court declined to review, I need not depend on that interpretation here, and I do not because we are told that denial of *certiorari* does not necessarily indicate acquiescence.

8. One of the majority opinions states that Mrs. Rettig was not offered an opportunity to see her own relatives or counsel until after the inquest (held on Monday). The statement ignores the

fact that two police officers testified Mrs. Rettig not only did not ask to see her relatives on Sunday but, on the contrary, stated "she didn't want to see any of her people; that she had not been in touch with them and that she didn't want to see them." One of the police officers testified he made repeated efforts on Sunday to find out from Mrs. Rettig the name or location of a relative but to no avail. The same officer testified he believed it was not until Monday that Mrs. Rettig gave him the name of her sister. There was evidence that she did not want the services of the attorney provided for her by her sister.

On the other hand, Mrs. Rettig testified that on Sunday she requested a police officer to call her sister, and gave him the telephone number. She further testified that one of the police officers

In our zeal to protect the appellant under the McNabb rule of evidence, we should not forget that a jury heard undeniably admissible evidence tending to show guilt, quite apart from the somewhat equivocal confession, and then solemnly determined that she terminated Robert Rettig's right to life and so forfeited her own right to liberty. We should remember that society has a stake in this business. The public has the right to expect the criminal laws to be strictly enforced. They should never be given any reason to suppose that at times the courts coddle convicted criminals by unduly emphasizing their rights over the wrongs they have done to the rights of others. I am afraid that the reversal of this conviction on a borderline application of the McNabb doctrine may seem to some to support such a supposition. I would affirm.

**Robert Lee WELLS, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 12901.**

United States Court of Appeals
District of Columbia Circuit.

Argued June 6, 1956.

Decided Nov. 8, 1956.

Mr. John A. Shorter, Jr., Washington, D. C., with whom Mr. Perry W. Howard, Washington, D. C., was on the brief, for appellant.

Mr. Lewis Carroll, Asst. U. S. Atty., with whom Messrs. Leo A. Rover, U. S. Atty., at the time brief was filed, William S. McKinley, E. Riley Casey and E. Tillman Stirling, Asst. U. S. Attys., were on the brief, for appellee.

Before EDGERTON, Chief Judge, and PRETTYMAN, WILBUR K. MILLER, BAZELON, FAHY, WASHINGTON, DANAHER, BASTIAN and BURGER, Circuit Judges, sitting en banc.

told her she could not call anyone. Thus, if the absence of Mrs. Rettig's relatives from the police station on Sunday had significance, it was for the jury to determine whether such absence was the fault of the police or of Mrs. Rettig. The majority, however, seems to have made this determination, ignoring the testimony of the two police officers.

Other points should be clarified because

they are not clearly reflected in the two majority opinions. Mrs. Rettig was not forced to take lie detector tests but agreed to do so when asked by the police officer. She made no claim that she asked for food and that it was denied at any time; on the contrary, she stated she never asked for anything to eat or drink except coffee, which she received. A police officer testified he offered Mrs. Rettig food at about 11:30 Sunday morning but that she declined to take anything. She testified she could not say the officer didn't offer her food but that "to my knowledge I did not hear him." There is no claim by Mrs. Rettig that she was harassed by lack of sleep or prevented from sleep by "continuous questioning" as in the McNabb case. There is no evidence from her in any form that any act, omission or delay on the part of the police in any way compelled, induced, or led her to do or say anything in the nature of admitting guilt.